## PEARSALL *vs.* McCARTNEY.

[PETITION BY BANKRUPT FOR SUPERSEDEAS OF EXECUTION—DISCHARGE CONTESTED
ON ACCOUNT OF FRAUD.]

1. *Bankrupt act, second section, construed.*—Under the second section of the bank-
rupt law, (U. S. Statutes at large, vol. 5, p. 440,) approved August 19th,
1841, the execution by a voluntary bankrupt, after the 1st January, 1841,
of a deed of trust giving a preference to some of his creditors, does not in-
validate his discharge in bankruptcy, unless the act was "done in contem-
plation of the passage of a bankrupt law."

2. *Amendment of petition for supersedeas allowable.*—A petition for *supersedeas*,
which, under our practice, stands in lieu of a declaration, may be amended,
by leave of the court, after demurrer sustained to the original, provided the
amendment does not make an entirely different case as to the execution
sought to be superseded.

3. *Right to open and conclude argument.*—The defendant in the judgment, who ap-
plies for the *supersedeas*, is the plaintiff in the proceedings subsequently had
on his petition, and is therefore entitled to open and conclude the argu-
ment.

4. *Evidence of bankrupt's general good character inadmissible.*—When a bankrupt's
certificate of discharge is impeached for fraud, evidence of his general good
character is not admissible for him.

5. *When objection may be raised to irrelevant evidence.*—Irrelevant evidence may
be excluded from the jury, on motion, at any time before they retire; the
right to move its exclusion is not waived by failing to raise the objection
when it is offered.

6. *Using bill in chancery as evidence in another cause.*—When a bill in chancery is
offered in evidence, in another suit, as an admission of the complainant, it
is governed by the same rules that apply to all other admissions; and con-
sequently he cannot use his amended bill as rebutting evidence against the
original.

APPEAL from the Circuit Court of Morgan.

Tried before the Hon. JOHN E. MOORE.

EDWARD PEARSALL, the appellant, obtained a judgment
against Alexander A. McCartney, at the September term,
1841, of the circuit court of Morgan, for $580 92 debt, and
$85 80 damages, besides costs, on which he caused an execu-
tion to be issued on the 14th June, 1850, and levied on cer-
tain lands, slaves, and other property belonging to said

McCartney. The execution was duly returned by the sheriff, with his levy thereon endorsed ; and a writ of *venditioni exponas* was thereupon issued. McCartney then filed his petition for a *supersedeas* of the execution, on the ground of his discharge in bankruptcy under the act of congress approved August 19, 1841. His petition alleged, in addition to the facts above stated, that he presented his petition for the benefit of the bankrupt law, on the 3d September, 1842, to the district court of the United States at Huntsville, and was declared a bankrupt, by the decree of said court, at its May term, 1843; that this decree discharged him from all liability on account of said judgment, and on account of the debt on which it was founded; and that the land, slaves, and other property on which the execution was levied, were acquired by him subsequently to his said discharge in bankruptcy, and are not therefore subject to said execution.

The plaintiff in the execution gave notice that he would contest and impeach the validity of the defendant's certificate of discharge in bankruptcy, on the ground of fraud " in failing to render in his petition and schedule a full and complete inventory of his property, rights of property, and rights of credits, as required by said bankrupt act, and in withholding the same for the purpose of defrauding his creditors"; and filed the following specifications of fraud :

" 1. Plaintiff charges that, at the date of defendant's said petition for the benefit of said bankrupt law, there was due and owing to the said defendant, by one Rebecca Adams, the sum of $550, for board, washing, lodging, fuel, lights, and clothing, which were furnished and supplied to her by said defendant, from the 1st of January, 1839, to the date of his said petition for the benefit of said act of congress; that said defendant, by a special contract between him and said Rebecca Adams, was to receive from her the sum of $150 *per annum* from said 1st day of January, 1839, for her said board, washing, &c.; that said Rebecca was always able to pay said debt; that, at the time defendant filed his said petition in bankruptcy, said Rebecca had made no payment to him on account of said board, &c.; and that the whole sum which had accrued from said 1st day of January, 1839, to the date of said petition in bankruptcy, was due and unpaid, a valid

and subsisting debt. And plaintiff charges that said McCartney did not surrender said debt owing to him by said Rebecca Adams, or any portion thereof, to the assignee in bankruptcy, or embrace or mention it in the schedule or inventory of his property, rights of property, and rights of credit, but fraudulently and willfully concealed and withheld the said debt, in violation of said act of congress."

"2. Plaintiff charges that, in addition to the articles of property which were allowed by the assignee in bankruptcy, in accordance with the provisions of said act of congress, for the private use of said defendant, said McCartney fraudulently and willfully withheld the sum of $1,000 in cash, which he did not surrender to said assignee in bankruptcy, nor render in his said schedule, as by law he was required; but fraudulently and willfully withheld the same, in violation of the provisions of said act of congress."

"3. Plaintiff charges that said defendant fraudulently and willfully withheld the sum of $1,000 in bank-notes, which he did not surrender to said assignee in bankruptcy, nor render in his said schedule of property, rights of property, rights and credits, as by law he was required, but fraudulently and willfully withheld the same, in violation of said act of congress."

"4. Plaintiff charges that said McCartney, on the 6th day of March, 1841, in contemplation of bankruptcy, made and executed a certain deed of trust to James H. Blair as trustee, for the benefit of David M. Hunter, Alexander Ross, and James A. Patterson, to secure certain debts therein mentioned due to the Branch Bank of the State of Alabama at Decatur, and a certain debt to Jesse H. Davis therein named due and owing by said McCartney, on which said beneficiaries and one William Devan were also bound, as is therein shown. And plaintiff charges that said McCartney, in said deed of trust, conveyed all the property which he owned, except a very insignificant fraction thereof; among other things, his tavern house and lots, known as the 'Decatur Inn', and all their appurtenances, two negro slaves, Frank and Lucy, as well as twenty-five beds, bedsteads and clothing, horses, barouche, clock, chairs, sofas, dressing-tables, &c.; that said property was conveyed for the benefit of special and preferred

creditors, to the unjust exclusion of a large number of other creditors not provided for therein; and that said deed was made in contemplation of bankruptcy, and in violation of said act of congress."

" 5. Plaintiff charges that said deed of trust was executed on said 6th day of March, 1841, and was made in contemplation of the passage of a bankrupt law; that said McCartney was a voluntary bankrupt; that in said deed of trust a preference was given and secured to said Hunter, Ross and Patterson, over plaintiff and other creditors of said McCartney; and that said deed was otherwise fraudulent."

" 6. Plaintiff charges that, under said deed of trust, McCartney enjoyed and realized a usufruct profit, which was worth the sum of $500, and which he fraudulently withheld from the assignee in bankruptcy, in violation of said act of congress."

" 7. Plaintiff charges that said deed of trust was made in contemplation of bankruptcy, and in contemplation of the passage of a bankrupt law, and with the view and intent (said McCartney being a voluntary bankrupt) that certain preferred creditors therein provided for should be secured by the sale of said property, and with the fraudulent and unlawful intent that his property, rights of property, &c., should not pass into the hands of his assignee in bankruptcy, and be fully, justly, and equally divided *pro rata* among all his creditors, according to the provisions of said act of congress; which said fraudulent intent, plaintiff charges, was effected by the sale of said property under said deed of trust."

" 8. Plaintiff charges that said deed of trust, made by said McCartney, was executed within six months *after* (?) the passage of said bankrupt law by the congress of the United States; that said McCartney was a voluntary bankrupt; that said McCartney, in said deed of trust, made and secured to certain creditors therein mentioned a preference and priority over plaintiff and other *bona fide* creditors; that a majority in interest of said McCartney's creditors did not assent to his obtaining his certificate of discharge in bankruptcy; and that said deed was made in contemplation of the passage of a bankrupt law, in violation of said act of congress, and with the intent to give a fraudulent preference to the beneficiaries in said deed."

Issue was taken on the first, second, and third specifications, and a demurrer interposed to the others. The plaintiff in execution joined in the demurrer, and insisted that it should be visited on the petition for *supersedeas.* The court held the petition demurrable, but gave leave to amend; and the petition was thereupon amended by inserting the additional allegations, "that said judgment was founded on petitioner's promissory note, bearing date the 8th day of January, 1839, and that said debt was not created in consequence of any defalcation as a public officer, or as executor, administrator, guardian, or trustee, or while acting in any other fiduciary capacity." The specifications were then, by leave of the court, amended as follows :

"4. Plaintiff charges that said McCartney, on the 6th day of March, 1841, did make and execute a certain deed of trust, in fraud of said bankrupt law, to James H. Blair as trustee, for the benefit of David M. Hunter, Alexander Ross, and James A. Patterson, to secure certain debts for which they were sureties, and also to secure the payment of a certain debt to Jesse H. Davis therein named, conveying therein his tavern house and lot, slaves Frank and Lucy, &c., &c., and all his property except an inconsiderable part thereof; that said deed of trust was made and executed for the benefit of the aforesaid preferred creditors, to the exclusion of the plaintiff in this suit, of —— Gillespie, and of other creditors of said McCartney, who were not provided for in said deed; that said McCartney is a voluntary bankrupt; and that a majority in interest of his creditors who were not preferred did not assent to his discharge as a bankrupt."

"5. Plaintiff charges that a deed of trust was made by said McCartney, dated March 6, 1841, wherein he secured David M. Hunter, Alexander Ross, and James A. Patterson, to the exclusion of plaintiff and other creditors of said McCartney, and was made in contemplation of the passage of the bankrupt law; that said deed conveyed his tavern house and lot, slaves Frank and Lucy, &c.; that said McCartney was a voluntary bankrupt; and that his discharge as a bankrupt was not assented to by a majority in interest of those of his creditors who were not preferred in said deed of trust."

" 6. That said McCartney made said deed of trust on the 6th day of March, 1841, preferring and securing therein D. M. Hunter, Alex. Ross, and James A. Patterson, by transferring his tavern house and lot, slaves Frank and Lucy, &c., and in contemplation of the passage of a bankrupt law, and excluding plaintiff and other creditors from the benefit of said deed; that said McCartney was a voluntary bankrupt; that said deed was made with the fraudulent view and intent that said Hunter, Ross and Patterson should be secured by the sale of said property; and that a majority in interest of said McCartney's creditors, not so preferred, did not assent to his discharge as a bankrupt."

A demurrer was interposed to each of the amended specifications, and sustained as to the fourth, but overruled as to the fifth and sixth; upon which issue was then joined.

On the trial, as appears from the bill of exceptions, McCartney read, in support of his motion to quash the execution, his certificate of discharge in bankruptcy, the promissory note on which Pearsall's judgment was rendered, and the date of said judgment; all which were read in evidence to the jury without objection, and corresponded with the recitals in the petition for *supersedeas*; and then rested his case. "Pearsall then introduced to the jury, as evidence under his first specification, the record of a bill in chancery filed by said McCartney, about the 25th August, 1849,' against W. J. Delony, who had intermarried with said Rebecca Adams, for the recovery of the debt mentioned in said specification, and attaching certain property for the payment of said debt; also, the record of McCartney's answer to a cross bill filed by said Delony in the same suit, which answer was filed on the 24th December, 1849. Thereupon McCartney offered to read to the jury, as rebutting evidence, the record of his amended bill in the same cause, filed October 7, 1850. It was further in proof, that the execution here sought to be quashed, was issued on the 14th June, 1850, and levied the 2d September, 1850; and that sundry other executions were levied at the same time. Pearsall objected to the reading of said amended bill as rebutting evidence for McCartney; which objection was overruled by the court, and the same was read; and Pearsall excepted."

"Pearsall also introduced as evidence, in support of his first specification, as a circumstance to show that the omission of the said account against Miss Adams could not have been from mere forgetfulness or oversight, the schedule of said McCartney, rendered in upon his petition to be declared a bankrupt, to show that many small accounts and debts due to him were therein included which were worthless. He proved, also, as a circumstance to support the second and third specifications, that said McCartney, at the sale of his effects by the assignee in bankruptcy, purchased certain articles of property; also, various other circumstances, for the purpose of showing that McCartney had made a dishonest and false surrender or schedule of his effects. McCartney then offered evidence to show that eighteen months, or more, had expired between his surrender in bankruptcy and his said purchase; that his purchases at said assignee's sale were worth and cost about $400; that at his surrender he was in possession of a profitable tavern in Decatur, which he was permitted to retain from the date of his surrender in bankruptcy until said sale,—some eighteen months or more; that the debt on Miss Adams was a worthless account; that she was a poor orphan girl, in delicate health, between twelve and fourteen years old, at the time he filed his said petition in bankruptcy, entirely penniless and dependent, and furnished by him with her clothing, and with medical attendance in her frequent sickness; that the claim against her, at the time of his surrender in bankruptcy, and for many years afterwards, was entirely worthless; that she became possessed of property, by accident, many years after the filing of his petition in bankruptcy, and that, until then, said claim against her was not of any value. McCartney then introduced witnesses to prove that his general character for truth and honesty, both before and after his surrender and petition in bankruptcy, and up to the present time, was wholly unimpeached. To all this evidence Pearsall made no objection, and suffered the same to go before the jury. Plaintiff and defendant then announced to the court that they were through with their testimony, and the court adjourned for dinner. When court was called after dinner, McCartney's attorney was proceeding to put the case to the jury; but before he had entered upon his argument,

Pearsall, by his attorney, moved the court to reject from the consideration of the jury all the testimony in regard to character; which the court refused to do, and Pearsall excepted."

"The court permitted McCartney, by his attorney, to open and close the argument to the jury; to which Pearsall objected, and, his objection having been overruled, excepted."

The errors now assigned are, the sustaining of the demurrer to the fourth amended specification, the allowance of the amendment to the petition for *supersedeas*, and the several rulings of the court shown in the bill of exceptions.

DAVID P. LEWIS and JAS. E. BELSER, for the appellant:

1. The demurrer to the fourth specification ought not to have been sustained. That specification asserts a correct legal proposition, and rests on two propositions: 1st, it states a cause, which, if urged against the bankrupt pending the proceedings on his petition, would have defeated his discharge; and, 2d, that that cause will now avoid his discharge, when proved to be true, under the fourth section of the bankrupt act. The bankrupt act is to be construed, not liberally in favor of the bankrupt, but strictly as against common right; because the rules for the construction of statutes require, that a statute which is intended to deprive creditors of all remedies for honest debts should be construed strictly, and that a statute shall be so construed that, if possible, no clause, sentence, or word in it shall be superfluous, void, or insignificant.—Salters v. Tobias, 3 Paige's Ch. R. 346; Dwarris on Statutes, 21, 79; 12 Modern R. 513; 9 Bacon's Abr., 250, 256; Reynolds v. Baldwin, 1 La. Ann. R. 162.

The application of these rules to the bankrupt act will show that the second clause of the second section embraces two classes of persons who are excluded from the benefit of the act; while the construction which would make it embrace only one class, lessens the number of persons who are still bound to pay their debts, and gives no significance whatever to the words "subsequent to the first day of January last, or at any other time." It is reasonable that congress should have excluded persons who made preferences among their creditors after the 1st January, 1841, from the benefits of the act; and it is not unreasonable that the time

specified, the 1st January, 1841, should be taken as conclusive that the preference was made "in contemplation of the passage of a bankrupt law." It was then notorious that such an act would become a law; and this provision was evidently intended to guard the cardinal policy of the law,—a *pro rata* distribution of assets among creditors.

The awkward punctuation of the section, on which an argument for the appellee's construction is predicated, will not be allowed to change the obvious meaning of the statute. Campbell v. Harding, 2 R. & M. 390. To make the words, " subsequent to the 1st January last," mean the 1st January, 1842, would nullify the words " in contemplation of the passage of a bankrupt law"; for an act could not be done "in contemplation of the passage" of an act already passed.

There are, then, four classes of persons embraced in the second section of the act, as not entitled to discharges ; and the discharges in all the four classes stand upon the same basis, and may be avoided for the same reasons.—1 Cushing, 569–72; 9 Metcalf, 434; 4 Denio, 75; 7 Watts & Serg. 312; 2 Story, 358–60; 13 U. S. Digest, p. 79, §§ 1 to 5; United States v. Jones, 3 Wash. C. C. R. 209.

2. The original petition for the *supersedeas* brought the case before the court; and the court erred in allowing it to be amended.—Branch Bank at Mobile v. Coleman, 20 Ala. 145.

3. That McCartney's amended bill in chancery was improperly received as evidence in his favor, see Lee v. Hamilton, 3 Ala. 583.

4. The court erred in permitting McCartney to introduce evidence of his general good character, to rebut the presumption of fraud arising out of the circumstances of the case. Ward & Thompson v. Herndon, 5 Porter, 386, which overrules the case cited in the text of Greenleaf; Gough v. St. John, 16 Wend. 653; Humphrey v. Humphrey, 7 Conn. 118; Givens v. Bradley, 3 Bibb, 195; Potter v. Webb, 6 Greenlf. 18; Dorsey v. Whipps, 8 Gill, 457.

5. The opening and conclusion of the argument should have been allowed to Pearsall's counsel. Pearsall was the plaintiff in the execution, and retained his character of plaintiff throughout the proceedings. He occupied the same posi-

tion as if he had sued upon his judgment, and had replied fraud to a plea setting up the discharge in bankruptcy. The *supersedeas* merely arrested the execution until court, and then became *functus officio*. Could McCartney have dismissed the proceedings?—Grady's Adm'r v. Hammond, 21 Ala. 428; Worsham v. Goar, 4 Porter, 441; Dunlap v. Clements, 18 Ala. 783; Edwards v. Lewis, 16 *ib*. 815; Shearer v. Boyd, 10 *ib*. 281.

R. W. WALKER, *contra:*

I. As to the demurrer to the fourth specification:

1. The matter of this specification, if well pleaded, will not avail to impeach a discharge in bankruptcy. There is a clear distinction between acts which are a fraud on the bankrupt act and acts which are in themselves fraudulent. Thus, the giving of preferences is an unlawful act, and would prevent the grant of a discharge; but giving a preference is not such an act of fraud as will impeach a discharge when obtained.—North Am. Ins. Co. v. Graham, 5 Sandf. 197, cited in U. S. D. 1853, p. 80, § 33; Mabry v. Herndon, 8 Ala. 848, (856, 858); Fox v. Paine, 10 Ala. 523, (525–6); Weiner Farnum, 2 Barr, 146, (151); Humphreys v. Swett, 31 Maine, 192; Sinclair v. Smith, 1 Brev. 402.

By the 4th section it is provided, that if any bankrupt shall be guilty of either of certain specified acts, "he shall not be entitled to any such discharge." It is also provided, that the discharge, when granted, shall be conclusive, *unless impeached for fraud or willful concealment*. The distinction is broadly drawn between acts which will avail in *denial* of the discharge in the bankrupt court, and acts which furnish grounds for its impeachment after it is obtained. This is obvious from the language of the 4th section, and is confirmed by the 2d section. Again, there is a marked distinction made between the conveyances specified in the first clause of the 2d section and those specified in the last. While the first are pronounced "*utterly void and a fraud on this act*," the only consequence of the last is, that if the execution of them be made "to appear in the course of the proceedings in bankruptcy, the petitioner *shall not receive his discharge*."

All of the cases relied on by the appellant are cases in

which the ground for impeaching the discharge was the making of some one of the conveyances specified in the *first* clause of the 2d section, and which are denounced by the act itself "as utterly void and a fraud on this act." Such conveyances have some element of *moral fraud*, and there is no great hardship even in *avoiding* a discharge because of them.

2. The demurrer was properly sustained, because it does not allege that the deed was made "in contemplation of the passage of a bankrupt law." The averment that it was made "in fraud of the bankrupt law" is the statement of a legal conclusion.—Rugely v. Robinson, 19 Ala. 404; Chadwick v. Starrett, 27 Maine, 138; Mabry v. Herndon, 8 Ala. 858, (863); Stewart & Fontaine v. Hargrove, 23 Ala. 430, (436). The words, "in contemplation of the passage of a bankrupt law", refer to all the conveyances specified in that sentence. A conveyance executed "subsequent to the 1st day of January last", but *not* "in contemplation of the passage of a bankrupt law", is not within the provision of that section.—7 Watts & Sergt. 305, (313.)

The punctuation of this clause confirms this view. To hold that the bare execution of a deed of trust, *or giving* a preference in *any other way* after 1st January, 1841, and not in contemplation of the passage of a bankrupt law, but in perfect good faith, was not only good reason for *refusing* the discharge, but is conclusive in *impeachment* of it, would work incalculable injury, and lead to most disastrous results. Not one in ten of the bankrupt certificates obtained in this State would be good, under this construction of the act. The universal understanding of the bar and people of this State has been otherwise; and this court will pause before it will change a construction so long acquiesced in, and to disturb which would open the floodgates of litigation and bring ruin on individuals and families.

3. But the words "subsequent to 1st January last," in the 2d section, refer to 1*st January*, 1842, not 1841. The act (by the 17th section) took effect 1st February, 1842, and every section of it speaks from that date.—Weiner v. Farnum, 2 Barr, 144 (151); Chadwick v. Leavitt, 5 Law Rep. 424; In the matter of Eli Horton, 5 Law Rep. 462.

4. But, even if the demurrer was improperly overruled, this

court will not reverse, because the defendant had the full benefit of the matter pleaded in the 4th specification, under the 5th and 6th. The test is, were the facts alleged in the 4th, *admissible* under the 5th and 6th specifications.—19 Ala. 66; 15 *ib.* 276; 4 *ib.* 230; 7 *ib.* 162; 24 *ib.* 521.

II. The grant of leave to McCartney to amend his petition was not objected to below. No exception being taken to it, it cannot be assigned for error.—Gordon v. McLeod, 20 Ala. 242; Saltmarsh v. Bower, 22 Ala. 224. Besides, the petition is considered as the declaration of the plaintiff, and the specifications as the pleas of defendant; and they are both within the statute of jeofails.—Edwards v. Lewis, 16 Ala. 817; 10 *ib.* 279; 23 *ib.* 429 (437.)

III. As to evidence of character : The objection to the discharge, on the ground that the bankrupt did not make a full disclosure, *involves a charge of fraud and perjury*, and ought to be substantiated by direct testimony, or by unequivocal circumstantial evidence of it.—*In re* Pearce, 21 Vermt. 611; Sanders v. Smallwood, 8 Iredell, 125. That proof of general character was admissible under the charges made and evidence introduced, see 1 Greenl. Ev., § 54, note 1, (5th edition); Fowler v. Ætna Ins. Co., 6 Cowen, 675; Townsend v. Graves, 3 Paige, 455; Ruan v. Perry, 3 Caines, 120; Ward & Thompson v. Herndon, 5 Porter, 382-6; Felix v. State, 18 Ala. 720 (725.)

The defendant, by permitting the evidence to go to the jury, under the circumstances detailed in the bill of exceptions, waived the objection. He will not be allowed thus to speculate and experiment on the evidence.—Allen v. Smith, 22 Ala. 422 (423); Phillips v. Lane, 4 Howd. (Miss.) 122 (127); Nichols v. Hayes, 13 Conn. 156; 22 Ala. 271.

IV. As to admission of McCartney's amended bill : The amended bill is but a continuation of the original bill, the two forming a *unit*. The defendant, having introduced a part of this " one record", made the whole evidence.—1 Daniell's Ch. Prac. 455, and notes; Hard v. Everett, 1 Paige, 424; Crocker v. Clements, 23 Ala. 296; Buller's N. P. 57; 1 Starkie's Ev. 291; 1 Phill. Ev. 341.

V. As to right to open and conclude : The petitioner was the plaintiff, and the contestant the defendant. *Superse-*

*deas* is a suit, and governed by all the rules applicable to ordinary suits. The *plaintiff* is always entitled to open and close. *The trial was on McCartney's motion to quash.*—Edwards v. Lewis, 16 Ala. 815; Shearer v. Boyd, 10 *ib.* 279; Moore & Cocke v. Bell, 13 *ib.* 469 (473); Grady's Adm'r v. Hammond, 21 *ib.* 427–8; Bruce v. Barnes, 20 *ib.* 219.

GOLDTHWAITE, C. J.—We will first consider the action of the court below in sustaining the demurrer to the fourth specification, which alleges that McCartney, on the 6th of March, 1841, executed a deed of trust in fraud of the bankrupt law, for the benefit of certain creditors, conveying to them for their benefit his tavern house and lot, certain slaves, and all his property except an inconsiderable part thereof.

It is to be observed, that the single matter of fraud alleged in this plea is the act of the bankrupt in giving by deed, executed on the 6th March, 1841, a preference to' certain of his creditors. The allegation, therefore, that the deed was executed in fraud of the bankrupt law, is merely a conclusion of the pleader, and is entitled to no weight, unless the execution of such a deed is, of itself, a sufficient ground to invalidate the proceedings, or to impeach the discharge.

The bankrupt law was passed in August, 1841. The second section provides, " that all future payments, securities, conveyances, or transfers of property, or agreements, made or given by any bankrupt, in contemplation of bankruptcy, and for the purpose of giving any creditor, endorser, security, or other person any preference or priority over the general creditors of such bankrupt; and all other payments, securities, conveyances, or transfers of property, made or given by such bankrupt in contemplation of bankruptcy, to any person or persons whatsoever, not being a *bona fide* creditor, or purchaser for a valuable consideration without notice, shall be deemed utterly void and a fraud upon this act; and the assignee under the bankruptcy shall be entitled to claim, sue for, recover, and receive the same as part of the assets of the bankruptcy; and the person making such unlawful preferences and payments shall receive no discharge under the provisions of this act. *Provided,* that all dealings and transactions

by and with any bankrupt, *bona fide* made and entered into more than two months before the petition filed against him or by him, shall not be invalidated or affected by this act; *Provided,* that the other party to such dealings or transactions had no notice of a prior act of bankruptcy, or of the intention of the bankrupt to take the benefit of this act.   And in case it shall be made to appear to the court, in the course of the proceedings in bankruptcy; that the bankrupt, his application being voluntary, has, *subsequent to the first day of January* last, or at any other time, in contemplation of the passage of a bankrupt law, by assignment or otherwise, given or secured any preference to one creditor over another, he shall not re-receive a discharge, unless the same be assented to by a majority in interest of those of his creditors who have not been so preferred."

The question is, whether giving a preference to a creditor since the first day of January, 1841, although such act is not done in contemplation of the passage of a bankrupt law, is prohibited by this section.   The language used in the first part is without the slightest ambiguity.   It covers only such preferences as may be given by the bankrupt, after the passage of the law, *in contemplation of bankruptcy.*   Now it would be very strange if the law-makers should visit an act done before the law with a penalty, and allow the same act to pass free if done after the passage of the law; and this must be the effect, if the construction insisted upon by the appellants be correct.   If a bankrupt gives a preference before the passage of the law, it prevents his discharge; if after, he can obtain it.   We are to distinguish in favor of the preference given after the act, and denounce the preference which the bankrupt gives before its passage.

Such results appear to our minds so unreasonable and contradictory that we could only be forced to adopt a construction which would produce them by the clearest and most unequivocal language.   We fully concede that, in the interpretation of statutes, courts should, if possible, give effect to every word and sentence; although it is frequently very necessary, in the application of this rule, not to lose sight of others equally as important in enabling courts to arrive at the true intent of the statute.   The main argument to sup-

port the construction contended for by the appellants, is, that in giving any other we should nullify the words, "subsequent to the first day of January last." But we see no real difficulty on this point. We regard the words referred to as used simply to designate a certain period of time included between the first of January, 1841, and the passage of the act; and the words "or at any other time," immediately following, can only be referred to a period antecedent to the first of January. The act to which the statute points, when done within either of these periods of time, is thus connected with the succeeding words, and is prohibited only when done in contemplation of the passage of a bankrupt law. The whole sentence, we agree, is awkwardly expressed; but the construction we have given it violates no rule, and harmonizes instead of conflicting with the other parts of the act.

As to the amendment of the petition, we are satisfied that it was within the power of the court. Under our practice, the petition for the *supersedeas* stands in the place of the declaration (Edwards v. Lewis, 16 Ala. 315); and we can see no good reason why it may not be amended, provided that, in so doing, an entirely new case is not made, as to the execution which is described in the petition. If the amendment changed the execution, we incline to the opinion, that a new order and *supersedeas* would be necessary, if the object was to continue the *supersedeas*: But this is not the case here, as the amendment merely states the ground on which the rights of the petioner depends, with more fullness and particularity; and in this aspect we can see no possible objection to it, the more especially as none was made to it by the opposite party, who answered it by his specifications.

Upon the question of practice, as to which party has the right to open and conclude, the construction given by this court, since a very early day, to the 19th rule of practice (Clay's Digest, 610), is that in every case the plaintiff has this right. Worsham v. Goar, 4 Port. 441; Grady v. Hammond, 21 Ala. 428. We have frequently held, also, that, with us, the *supersedeas* was a substitute for the old writ of *audita querela*.—Edwards v. Lewis, *supra;* Bruce v. Barnes, 20 Ala. 219. In that writ, the defendant in the judgment was the actor, or plaintiff, and complained of the other party, (F. H. N. B. 234,)

Pearsall v. McCartney.

who demurred, or pleaded.—Tidd's Practice, 672, 717, 718. So, in the petition for, and the writ.of *supersedeas*, the defendant in the execution is the actor; the petition, or statement of facts, which in law entitles him to the relief he seeks, stands in the place of the declaration; and the plaintiff in the judgment either demurs or pleads to it. It is in the nature of a new suit.—Shearer v. Boyd, 10 Ala. 179 ; Edwards v. Lewis, *supra;* Bruce v. Barnes, *supra.* It was upon the same principles that we held, in Grady v. Hammond, *supra*, in an issue between a plaintiff in attachment and the transferree of the debt attached, that the former was entitled to the opening and conclusion; for the reason that, in that proceeding, he was the actor, and consequently the plaintiff. Upon all the analogies, we must hold that McCartney, in these proceedings, occupied the position of plaintiff, and therefore had the right to open and conclude.

As to the question of allowing the general good character to be given in evidence, in civil causes, the rule is, that in slander, criminal conversation, and breach of marriage contract, as the character of the party may legitimately enter into the question of damages, in such cases, it may be given in evidence (2 Stark. Ev.); but although the issue in civil cases may directly involve the commission of a fraud, the English rule, as well as the current of American cases, is, that the party against whom the fraud is charged is not warranted in repelling it by evidence of his character.—Att'y Gen. v. Bowman, 2 B. & P. 532, n. a.; Gough v. St. John, 16 Wend. 646; Swetz v. Plunket, 1 Strob. 372; Potter v. Webb, 6 Greenl. 14; Cow. & Hill's Notes to Ph. Ev., 456, and cases there cited. Our own court, in Ward v. Herndon, 5 Port. 382, held in conformity with the views we have expressed; and we consider that decision a correct exposition of the law.

It is urged, however, that as the appellant made no objection when the evidence was offered, but permitted it to go before the jury, and did not ask to exclude it until after the evidence on both sides was closed; his motion was, under these circumstances, properly overruled.

There may be cases, where the party waives his right to object, by failing to do so in time; as where secondary evidence is offered, in which case, if this objection be not made

in season, the other party may not have the power to obviate it.—Russell v. The Union Insurance Co., 1 Wash. C. C. R. 409; Concord v. McIntyre, 6 N. H. 527. But this is on the ground that the objection, if made in time, might have been removed, and goes rather to the mode and manner of proof than to the evidence itself. But the principle has no application to evidence which is in its nature irrelevant; and as to evidence of this character, the party who is in fault, by introducing it, cannot complain of its rejection at any stage of the trial. It is true that, in Townsend v. Jeffries, 24 Ala. 329, we held that the failure to object to a written interrogatory, asking a witness where he saw a trespass committed, and to describe it, operated as a waiver to the reply, if responsive. There, however, the fact to which the question pointed, if established, was relevant to the case; while here the fact is altogether irrelevant, and we think, where such is the case, the objection may be properly taken at any time before the jury retire.—Creed v. White, 11 Humph. 549.

In relation to the admission of the amended bill, which the court allowed the appellee to introduce as rebutting evidence, after the original bill had been offered by the other party, we have only to observe that, where a bill in equity is used as evidence in another suit, as an admission of the complainant, it is governed precisely by the same rules which apply to other admissions (Roberts v. Tennell, 3 Mon. 249); and no rule is better settled than that admissions, made at one time, cannot be qualified or controlled by counter declarations made at another.—Lee v. Hamilton, 3 Ala. 529. It may be that an amended bill must be taken as part of the original bill, in the suit in which it is filed, and could there be used as evidence to rebut or explain admissions made in the original bill; for the reason, that the opposing party in the case has the advantage of his answer also as evidence. But in a different suit, where the parties are not the same, the rule would not apply.

For the errors we have noticed, let the judgment be reversed, and the cause remanded.

RICE, J., having been of counsel, did not sit in this case.