Ashley's Adm'r v. Robinson.

## ASHLEY'S ADM'R vs. ROBINSON.

[DEBT ON JUDGMENT—PLEA OF BANKRUPTCY—DISCHARGE IMPEACHED FOR FRAUD.]

1. *Variance between specification of fraud and evidence as to omission of slaves.*—Where a bankrupt's certificate is impeached for fraud, his declaration, at the time of purchasing a horse soon after the institution of the proceedings in bankruptcy, that "he wanted him to send to North Carolina for four or five negroes he had hid out there," is not admissible evidence under a specification of the fraudulent omission and concealment of certain notes, accounts, claims, "two negroes, Esther and Rhoda, and a large sum of money."

2. *Relevancy of evidence—Practice.*—Where evidence is *prima facie* irrelevant, it is the duty of the party offering it to show its relevancy, either by showing its connection with facts which are already proved, or by offering it in connection with facts expected to be proved.

3. *Variance in description of judgment.*—Under a specification of the fraudulent omission of a judgment for $122 81, evidence cannot be received of a judgment for $132 81, although it corresponds in every other respect with the judgment described.

4. *Relevancy of evidence to prove concealment of money.*—The collection by the bankrupt of a judgment, before or about the time of filing his petition in bankruptcy, is relevant evidence to sustain the charge of a fraudulent omission or concealment of money, if the circumstances tend to show that he had not parted with the money at the time of his application for the benefit of the act ; but if the judgment was collected by him after the institution of the proceedings in bankruptcy, such evidence would be irrelevant and inadmissible.

5. *Amendment of specifications.*—The specifications of fraud, of which notice has been served on the defendant, are amendable ; but the refusal of the court to allow an amendment, after the case has been put to the jury, is not revisable on error.

6. *When assent of preferred creditors to deed of assignment will be implied.*—As a general rule, the assent of the preferred creditors, to a deed of assignment which is beneficial to them, will be implied ; but not when the deed was made with intent to defraud the other creditors of the grantor.

7. *When bankruptcy revokes assignment.*—A fraudulent deed of assignment, when the express assent of the beneficiaries is not shown, is a mere power, and subject to revocation ; and the bankruptcy of the grantor is a revocation of it.

8. *Rights of assignee in bankruptcy to property fraudulently conveyed by bankrupt.*—Property conveyed by the bankrupt, prior to filing his petition, by deed of assignment fraudulent as to his creditors, vests in the assignee in bankruptcy, if the preferred creditors have not expressly assented to it ; and it is the duty of the bankrupt, if he still retains the possession of the property, to surrender it in his schedule.

9. *How fraudulent assignment, not in contemplation of bankruptcy, affects bankrupt's discharge.*—The fact that the bankrupt, before filing his petition, made a

fraudulent assignment which does not come within the provisions of the second section of the bankrupt act, does not, of itself, affect the validity of his discharge ; nor does his omission to surrender the property thus conveyed, although he retains possession of it, necessarily prove a fraud or willful concealment under the fourth section ; but these facts are admissible evidence, when his discharge is impeached by a creditor, as affecting the question of fraud or willful concealment.

APPEAL from the Circuit Court of Montgomery.

Tried before the Hon. JOHN GILL SHORTER.

THIS action was instituted by the administrator of John G. Ashley, deceased, against Seth Robinson, to recover the amount due on a judgment rendered in favor of said Ashley, against said Robinson, in March, 1839. The defendant pleaded his discharge in bankruptcy under the act of congress of 1841, which the plaintiff impeached for fraud ; the specifications of fraud, so far as material to an understanding of the case as here presented, being the willful and fraudulent omission, from the defendant's schedule, of the following assets : "A judgment in favor of said Robinson, against Holman Freeman, rendered at fall term, 1840, of the circuit court of Montgomery, for $132 81"; " the following negro slaves—to-wit, Esther, a woman about 45 years old, and Rhoda, a girl about 14 years old"; " the following demands, notes, accounts, &c.," (describing them,) " together with other claims, demands, notes, accounts, receipts, &c., set forth as assets of defendant on the 8th October, 1838, in an assignment made by him to Edward Hanrick and Thomas Welsh, which purported to be for the benefit of certain creditors therein named"; " a large sum of money, to-wit, the sum of $10,000, cash on hand at the time of filing said petition in bankruptcy."

Several exceptions were reserved by the plaintiff, during the progress of the trial, to the rulings of the court on the admissibility of evidence ; and also to its refusal to allow an amendment of one of the specifications of fraud, after the case had been put to the jury. These matters, which are now assigned for error, will be readily understood from the opinion of the court ; and a further notice of them in this place is therefore unnecessary.

WATTS, JUDGE & JACKSON, for the appellant.—1. The declarations of Robinson, which were offered in evidence, and rejected, to the effect that he wanted a horse " to send to North Carolina for four or five negroes he had hid out there," were competent and relevant, because they tended to show that he had fraudulently concealed his property.   One of the specifications of fraud was, that he had negroes which he fraudulently omitted from his schedule.   Whether these declarations had reference to the negroes specified in the notice, was a question for the jury, and not for the court ; and if for the court, still they tended to show the truth of the charge, and the court could not legally reject them.   But, even if they had no reference to the negroes named in the notice, they were competent evidence on the question of fraud.—Benning v. Nelson, 23 Ala. 804 ; Gilbert v. Bradford, 15 Ala. 769 ; Powell v. Knox, 16 Ala. 364.

2. The record of the judgment offered in evidence, should have been admitted.   There was no material variance between it and the judgment described in the notice : the parties, the court, and the term, were the same, and the difference in amount only ten dollars.   Was it at all necessary to have inserted in the notice the amount of the judgment?   The only object of the notice, required to be given to the bankrupt, of the grounds upon which his certificate will be impeached, is to enable him to meet the charge, and the court to determine whether the facts alleged are, in law, sufficient to impeach the decree.—Stewart & Fontaine v. Hargrove, 23 Ala. 436.   The description of a judgment by its date, names of parties, and of court, is certainly sufficient for either of these purposes.   But, if this judgment was inadmissible when first offered, it ought to have been received, when offered in connection with proof that there was no other judgment between the parties named, at the same term of the court.

3. If, however, these positions are not sustained, then it is insisted that it was competent to show that such a judgment as the one produced existed, and that the defendant had collected the money due on it, in order to support the specification of the willful concealment of money.   This proof tended to show that he had money on hand at the time he filed his petition in bankruptcy; especially when it was shown that, shortly

after his discharge, he was found in possession of property which could only have been bought with money, and which he could not have acquired by his skill and industry in so short a time. The impeaching creditor surely is not to be confined in his proof to the moment of filing his petition by the bankrupt. In all cases involving the question of fraud, the bankrupt's acts, both before and after his petition and decree, may be shown.—Gilbert v. Bradford, *supra*; Powell v. Knox, *supra*.

4. The court erred, also, in rejecting the evidence offered to prove that Robinson's assignment to Hanrick and Welsh was fraudulent. The plaintiff had proved that, soon after his bankruptcy, Robinson was found in possession of a large stock of goods, which he could not have made by his skill and industry after filing his petition; and this imposed on the defendant the burden of proving how he got them.—Cloud v. Hargrove, 18 Ala. 173, and authorities *supra*. It was also shown that, at the time of filing his petition, he was in possession of lands, negroes, and other property, which had been in his possession for years previous, and which he retained for years afterwards; and this imposed on him the *onus* of explaining.— Powell v. Knox, *supra*. To explain these facts, and to rid himself of the *prima-facie* case thus made out against him, he introduced an assignment made by himself, in 1838, to Hanrick and Welsh as trustees, conveying lands, negroes, goods, notes, accounts, &c., in order to show that, when he filed his petition in bankruptcy, he had no title or claim to this property. The plaintiff then proposed to prove that this deed was a fraudulent conveyance to hinder and delay creditors; that the preferred creditors never assented to it; that the trustees never took possession or control of the property; and that the defendant continued in possession, managing, controlling, and using every thing as his own. To allow Robinson to say that this proof cannot be received, because, if he committed a fraud in making this deed, it nevertheless binds both himself and the assignee in bankruptcy, who stands in his shoes, would be to permit him to take advantage of his own fraud. The objection comes, let it be remembered, not from a creditor, or trustee of a creditor, but from the man who committed the fraud.

Again ; under the facts proposed to be proved, the assignment was absolutely void, and the assent of the preferred creditors could not be presumed.—Townsend v. Harwell, 18 Ala. 301 ; Benning v. Nelson, 23 Ala. But, if such presumption could be indulged, the plaintiff proposed to rebut it, by proving that the preferred creditors did not assent. The assent of creditors will not be presumed, unless the deed is clearly for their benefit.—Smith v. Leavitts, 10 Ala. 93 ; Hodge v. Wyatt, 10 Ala. 271 ; Mauldin v. Armistead, 14 Ala. 702 ; Nelson v. Dunn, 15 Ala. 502 ; Lockwood v. Nelson, 16 Ala. 294 ; Pinkard v. Ingersoll, 11 Ala. 9. The deed, therefore, under the facts proposed to be proved, amounted to nothing more than a power vested in the trustees, which was revocable at the pleasure of the grantor.—Townsend v. Harwell, and Benning v. Nelson, *supra*. The bankruptcy of the grantor, of itself, operated as a revocation, and vested in the assignee in bankruptcy the absolute interest in the property. All the cases cited for the appellee, to the point that the assignee in bankruptcy cannot sue for property which the bankrupt had conveyed before filing his petition, will be found, on examination, to assert only that the rights of third persons, after having attached, cannot be divested by the assignee. But here, under the facts proposed to be proved, the rights of third persons never attached, and the property was as much Robinson's as though he had never made the deed.

If it be said that Robinson's creditors may now file their bill in equity to subject this property to the payment of their debts, and that consequently the assignee in bankruptcy could not sue for it, we deny the proposition. The case of Edwards v. Coleman, 2 Bibb, 204, under the old bankrupt law, is directly in point; holding, that the creditors cannot maintain such a suit, and that the assignee may sue for the property. The right to attack the bankrupt's certificate is not confined to judgment creditors, but is given to all. The creditor, unless he had some valid lien upon the property, could maintain no suit *in rem* to subject it; while, if he had a lien, it would be wholly unnecessary to attack the bankrupt's certificate of discharge, because the lien would be upheld notwithstanding the bankruptcy, and the assignee would take the property

subject to the lien. If a simple-contract creditor could,. under the rules and practice in equity, file a bill to subject this property to the payment of his debt, he would be met by the answer of the bankrupt, that the debt was discharged by the decree in bankruptcy ; and this would be a complete answer, unless the creditor could reply just what the plaintiff in this case replies. But the appellee says, that the creditor could not make this reply. If he is right in this proposition, and in his other proposition, that the assignee can assert no right to the property, the result is, that the bankrupt has property in his possession, at the time of filing his petition, which neither his creditors nor the assignee can recover ; and thus, shielded by his own fraud, he bids defiance to assignee and creditors. The judgment creditor is in the same predicament with the simple-contract creditor : if he sues upon his judgment, or issues an execution on it, or files a bill in equity, he is met in either case with a successful plea of bankruptcy, and is not allowed to reply the fraud. Is not this *reductio ad absurdum ?*

6. The position taken by the appellee's counsel, that this property was included in the bankrupt's schedule of assets, is not supported by the facts. The words of the schedule are, "Interest in a deed of assignment, of which the following is a copy," &c. This treats the deed as valid and subsisting, and only surrenders as assets the bankrupt's contingent resulting interest in the property after the payment of the secured debts.—Reavis v. Garner, 12 Ala. 661. The bankrupt himself placed this construction on it, when he surrendered to the assignee only some articles of personal property, of inconsiderable value, not covered by the assignment.

To show that the assignee may maintain a suit for property fraudulently conveyed by the bankrupt, see Anderson v. Maltby, 2 Vesey, 255 ; Carr v. Gale, 3 Woodbury & M. 38 ; Mitchell v. Winslow, 2 Story, 630 ; Bank v. Conger, 12 Sm. & M. 527 ; Storm v. Waddell, 2 Sandf. Ch. 494.

JOHN A. ELMORE, GEO. GOLDTHWAITE, and JAS. E. BELSER, *contra.*—1. Robinson's declarations, as to the negroes in North Carolina, were properly rejected, because they did not tend to sustain any of the specifications of fraud. The object

of the notice required by the act is, to enable the court to see that the facts alleged are sufficient in law to impeach the discharge, and the bankrupt to be prepared to meet it.— Stewart & Fontaine v. Hargrove, 23 Ala. 436 ; 1 Denio, 75 ; 11 Paige, 310 ; 27 Maine, 138. The evidence must, therefore, be confined to the specific fraud alleged. These declarations were offered to sustain the allegation of the concealment of money, while they tend only to prove the concealment of negroes. There was no offer to prove that the negroes spoken of were the same specified in the notice, and it cannot be presumed that they were the same.

2. There was a substantial variance between the judgment described in the notice and that offered in evidence. The notice must have certainty to a common intent—the same certainty that is required in a declaration ; and if this had been a suit on the judgment, the variance would have been fatal. Perhaps the judgment was described with unnecessary particularity ; but matter of description must be proved as alleged.—Green. Ev. §§ 66, 67, 68 ; 2 Strange, 1171.

3. The judgment was equally inadmissible in the second aspect in which it was offered. It was an attempt to prove a record by parol ; to supply by parol what was defective in record evidence.

4. The collection of this judgment by the defendant was not admissible to prove that, at the time of his application, he had money on hand. The time when the money was collected was not specified. If it was collected after the application for the benefit of the bankrupt act, the evidence was clearly inadmissible. If it was collected soon after the rendition of the judgment, no presumption would arise that it was kept on hand until the filing of the petition in bankruptcy, which was about eighteen months afterwards.—Powell v. Knox, 16 Ala. 364.

5. The exclusion of the evidence in relation to the deed of assignment, involves the question, what property and rights of property are acquired by the assignee in bankruptcy, on the rendition of the decree declaring the petitioner a bankrupt. For the appellee it is insisted, that the assignee is not a purchaser for valuable consideration, but has the title cast on him by operation of law ; that he takes only the rights of

property of the bankrupt as held by him at the date of the decree, except in cases where the bankrupt has committed a fraud on the bankrupt act itself; that he is only entitled to such property and rights of property as the bankrupt himself was legally or equitably entitled to at the date of the decree, and such as the bankrupt himself could have enforced by law, with the single exception of frauds on the bankrupt act itself; that this is not one of the cases in which the assignee has, or can enforce, rights which the bankrupt himself cannot enforce; and that, although the assignee is a trustee, and, in some respects the representative of the creditors, he is only clothed with their rights and powers where a fraud has been committed on the bankrupt act itself. The assignee derives no rights or powers from any act of the creditors: he is the creature of the statute, and derives all his rights, powers, and duties, from the law of his creation. The statute has left nothing to intendment: it has expressed every case in which it was intended to operate, and the manner, extent, and effect of its operation. One single, clear idea runs through all its provisions; that is, that the assignee takes the place of the bankrupt, with the single exception of frauds on the act itself, and in these, by the express terms of the act, he takes greater rights than the bankrupt. It was never contemplated that he should have rights which were vested in third persons, which were held by them independent of the act of congress, and over which congress could exercise no power. The bankrupt law is not retro-active, and does not purport to operate on acts which had occurred prior to its passage; with the exception of preferences given to creditors after the first day of January, 1841, or at any other time in contemplation of the passage of a bankrupt act.—Weiner v. Farnum, 2 Barr, 146. The clear language of the law, its enabling character, and the specification of the cases to which it shall apply, demonstrate that this case is excluded from its operation, as manifestly as if it had further said, ' and in no other cases shall the assignee sue for or recover such money or property, nor shall the same be assets in his hands.'—Camack v. Bisquay, 18 Ala. 287; Chilton v. Cabiness, 14 Ala. 449; Reavis v. Garner, 12 Ala. 665; Fletcher v. Morey, 2 Story, 565; Winsor v. McLellan, 2 Story, 495; Tallcott v. Dudley, 4 Scammon, 435; Cowden

v. Pleasants, 9 Barr, 60 ; 1 Cranch, 239 ; 1 Blatchford, 318 ; 3 Stnob. Eq. 203 ; 11 How. (U. S.) R. 44–6 ; 6 Foster, 484 ; 10 Johns. 453 ; 27 Miss. 379.

The decisions in the English courts proceed on the ground, that the acts of the bankrupt are a fraud upon the bankrupt law, not a fraud upon creditors under the statute of frauds ; and in this sense, the assignee is sometimes called the representative of the creditors, though he has none of the rights of creditors even under that law. It must not be forgotten, too, that all the English cases occurred after the adoption of their bankruptcy system, and there is not a single case where the conveyance was before the adoption of their statute. All such acts of fraud were, by the terms of the statute, made void against the assignee.—1 Barn. & Cress. 5 ; 5 Taunton, 109 ; 1 Maule & S. 517 ; 7 Barn. & Cress. 101 ; 2 Burr, 632; 2 Vesey, 255; 17 Vesey, 196 ; 9 Vesey, 87.

It remains to consider whether the bankrupt, under the facts stated, could have treated the assignment as a nullity. A conveyance, made with intent to defraud creditors, is not absolutely void, but is valid and binding as between the parties to the fraud.—Findley v. Cooley, 1 Blackf. 262; Astor v. Wells, 4 Wheaton, 466 ; Eddings v. Wilson, 1 Ala. 237 ; Marler v. Marler, 6 Ala. 367 ; Abney v. Kingsland, 10 Ala. 355 ; McRae v. Pegues, 14 Ala. 158 ; Dearman v. Radcliffe, 5 Ala. 192 ; McCutchen v. McCutchen, 9 Porter, 649. When the grantor places the preferred creditors in a worse condition than they would otherwise have been, an actual assent must be given by them to the terms of the deed, to make it valid ; but when the terms of the deed are beneficial to the creditors, their actual assent is not necessary to make it operative as against the grantor, but as against an attaching or execution creditor an actual assent must be shown.—Smith v. Leavitt, 10 Ala. 92; Lockhart v. Wyatt, 10 Ala. 231 ; Hodge v. Wyatt, 10 Ala. 271 ; Elmes v. Sutherland, 7 Ala. 262 ; Townsend v. Harwell, 18 Ala. 301; Benning v. Nelson, 23 Ala. 801. This assignment, on its face, devotes all the grantor's property, absolutely, to the payment of his debts, and contains no reservation or stipulation for his benefit, or to the injury of his creditors ; and there was no evidence that the preferred creditors had notice of the intention to commit a fraud in its

execution. The property having vested in the trustees by their acceptance of the trust, Robinson was estopped from denying their legal title, and also from denying the equitable title of the creditors.

6. Another objection to this evidence was, that no notice had been given that this deed would be impeached for fraud; but, on the contrary, it was referred to and described as a valid deed.—1 Denio, 75; 11 Paige, 310; 27 Maine, 138.

7. The record does not bear out the position, that the assignment was first introduced by the defendant below : its language is, that the deed was offered in evidence " during the progress of the trial." But, if it was offered by the defendant, it was still incumbent on the plaintiff to show that the purpose for which it was offered warranted its impeachment on the ground of fraud; and this the record wholly fails to show.

WALKER, J.—Prior reasonable notice, specifying in writing the fraud or concealment, for which a bankrupt's certificate of discharge is assailed, is expressly required by the act of congress.—5 U. S. Statutes at large, 444. A creditor, therefore, cannot be permitted to contest such certificate upon any ground not stated in the written notice previously given.—Stewart & Fontaine v. Hargrove, 23 Ala. 429; Petty v. Walker, 10 Ala. 379. The notice, initiating the contest of the appellee's bankruptcy, charged as the grounds of the contest a willful and fraudulent omission to insert in his schedule of his property certain specifically described judgments, demands, notes, accounts, and real estate, two negroes, Esther and Rhoda, and a large sum of money, " together with other claims, demands, notes, accounts, receipts, &c., set forth" in a certain deed of assignment. The plaintiff proved the declarations of the defendant, made a few weeks after filing his petition in bankruptcy, that the purpose for which he wanted a horse, at that time purchased by him, was " to send to North Carolina for four or five negroes he had hid out there." Those declarations were properly excluded by the court, because the fact which they tended to prove was not within the issues presented by the prior written notice. They conduced to establish as a fact, that the defendant had,

9

at the time of commencing his proceedings in bankruptcy, four or five negroes in North Carolina. The notice did not inform him that the omission from his schedule of those negroes would be relied upon as a ground for contesting the discharge in bankruptcy. It cannot be assumed that Esther and Rhoda were two of the negroes which he had had in North Carolina, and that therefore the declarations tended to sustain the specification in reference to those two negroes. The declarations were, *prima facie*, irrelevant to that specification; and if there existed facts which would show their relevancy, it was incumbent on the plaintiff to have shown, or offered to show those facts.—Bilberry v. Mobley, 21 Ala. 277.

Under a specification of a judgment for $132 81, a judgment for $122 81 could not be given in evidence. The judgment described in the notice, and that offered in evidence, are not the same. There is the same reason for requiring a substantial conformity between the notice upon which the bankrupt's certificate of discharge is contested and the proof, as between the allegations and proof in pleading. Under the rules of pleading, the variance between the judgment described in the notice, and that offered in evidence, would be fatal ; and it must have the same effect here. It follows that the court below did not err in refusing to admit in evidence the judgment for $122 81, when offered alone.

The same judgment was afterwards offered in evidence, in connection with proof that the defendant had collected it, for the purpose of sustaining the charge that the defendant had money at the time of his application for the benefit of the bankrupt law. In making the offer to introduce the judgment in connection with the other proof, it is not indicated at what time the collection of the judgment by the defendant was made, or whether it was before or after his filing his petition in bankruptcy. It is clear that, if the judgment was paid off to the defendant after the institution of the proceedings in bankruptcy, the evidence would be totally irrelevant to the question whether he had money at that time. If the judgment was paid off to the defendant about the time of filing his petition, or before that time, and the circumstances were such as to show that he had not parted with the money at that time, the evidence would be admissible, as affecting the ques-

tion whether he had money at the time he filed the petition.

The notice was amendable ; but the refusal of the court to allow the amendment, after the case had gone to the jury, is not revisable.—Stewart & Fontaine v. Hargrove, *supra ;* Goldsmith, Forcheimer & Co. v. Picard, 27 Ala. 149.

The defendant gave in evidence a deed of trust, made by him in 1838, to secure a number of creditors. The plaintiff offered to prove that the deed of trust was made with the intent to hinder and delay creditors of the grantor ; that the creditors never assented to the deed ; that the grantor retained possession of the property after making the deed, sold the goods conveyed, and collected the money therefor, and collected many other debts described in the deed, and had in his possession at the time he filed his petition the negroes and land, and uncollected notes and accounts described in the deed ; that the trustees never took possession or control of the property conveyed in the deed ; and that the defendant had in his possession much of the property from the time of filing his petition until after his discharge in bankruptcy. The above stated facts were collectively offered, and objected to ; and the objection was sustained. The tendency of all the facts offered was, to show that the deed of trust, or assignment, was fraudulent ; and their admissibility in evidence depends upon the question, whether, after the defendant had given the deed in evidence as an excuse for his omission to surrender as a bankrupt all or any part of the property conveyed by it, it was competent for the plaintiff to show that the deed was made with the intent to defraud the grantor's creditors.

The deed devotes the property conveyed unqualifiedly to the payment of pre-existing debts specified in it, and does not provide for any postponement or delay in the appropriation of it, through the agency of the trustees, to the payment of the debts. It is a voluntary assignment, in the ordinary form, discriminating in the order of payment among the creditors. It is executed by the grantor and the trustees, but not by any of the beneficiaries ; and there is no evidence of any assent in fact by any of the creditors to the deed. Under numerous decisions of this court, it must be regarded as the law, that such an instrument is a mere power, and does not have effect

as a conveyance of title until it has been assented to, either expressly or by implication, on the part of the beneficiaries.— Nelson & Hatch v. Dunn, 15 Ala. 519. As a general rule, the assent of the beneficiaries will be implied, where the instrument is beneficial to them ; but the law will not imply the assent of the beneficiaries, where the assignment has been made with the intent to defraud the grantor's other creditors. The law is clearly so settled in the cases of Benning v. Nelson, 23 Ala. 801, and Townsend v. Harwell, 18 Ala. 301.

It must, however, be observed, that such an instrument as the deed of assignment in this case will become operative as a conveyance in favor of any one or more of the creditors who may assent to it, and the assent of all the beneficiaries is not necessary to make it operative as a conveyance.—Smith v. Leavitts, 10 Ala. 92. If the assent of the beneficiaries in a fraudulent assignment could be presumed, the rule which makes the participation in the fraud of the beneficiary necessary to vitiate an assignment, would preclude the possibility of successfully assailing it for fraud, where it has been made without the knowledge of the beneficiaries, and in their absence.

If the assignment in this case was fraudulent, the assent of the beneficiaries could not be implied ; and it would be a mere power, subject, like other powers, to revocation. Bankruptcy would be a revocation of the power.—Parsons on Contracts, 60, note *l*. It follows that, if the deed of assignment made by the defendant was fraudulent, and if his creditors did not expressly assent to it, it was but a power, which was revoked by the bankruptcy. The court erred, therefore, in the rejection of proof that the deed of assignment was fraudulent.

In opposition to our conclusion, it is contended that, although the law will not presume the acceptance of a fraudulent deed by the beneficiaries, as against the creditors of the grantor, it must presume such acceptance as against the grantor, because the grantor cannot set up his own fraud. We do not either deny or assent to that proposition, because we do not consider its decision necessary in this case. The deduction from that proposition, that the assignee cannot assert that the conveyance was made with fraudulent intent, because he takes only the rights of the bankrupt, is not, in

our opinion, maintainable. The third section of the bankrupt law vests the assignee with all the rights, titles, powers, and authorities, to sell, manage, and dispose of the property and rights of property of the bankrupt, and to sue for and defend the same, as fully as if the same were vested in, or might be exercised by the bankrupt. While this clause confers upon the assignee all the rights of the bankrupt, it does not in terms exclude him from the exercise of rights which the bankrupt could not have exercised. The same section expressly provides, that all the property and rights of property of the bankrupt, "*of every name and nature,*" with certain exceptions not necessary to be noticed here, shall, by operation of law, vest in the assignee. Although property which has been fraudulently conveyed ceases to belong to the grantor, so far as any claim which he himself can set up is concerned ; yet the law regards property which has been fraudulently conveyed, as still the property of the grantor, so far as creditors are concerned. There is, therefore, a sense in which property fraudulently conveyed belongs to the grantor, in the estimation of the law ; and we conclude that such property will go to the assignee, under the words which vest in him the rights of the bankrupt of every " name and nature." Aside from this view of the subject, the assignee is an officer created for the benefit of creditors, and, it would seem, should be permitted to regard property fraudulently conveyed in the same way in which creditors are permitted to regard it. The conclusion we have attained, is opposed to the case of Porter v. Douglass, 27 Miss. 379 ; but then it is well sustained by other authorities.—State v. Bethune, 8 Iredell's Law Reports, 139 ; Carr v. Gale, 3 Woodbury & Minott, 38 ; Williams v. Vermeule, 4 Sandford's Ch. R. 388 ; Gore v. Lawrence, 6 Foster, 434.

If the assignee is not permitted to assert the invalidity of the fraudulent conveyance of a bankrupt, it cannot be asserted at all after the bankrupt's discharge ; for the creditors could institute no proceedings for that purpose, after their debts were discharged by the decree in bankruptcy. A fraudulent conveyance, not coming within the purview of the second section of the bankrupt law, cannot be reached at all, if the assignee is denied the power of asserting the bankrupt's fraud.

We do not intend to assert, that it is the duty of the bankrupt in every case to render in his schedule all property which he may have fraudulently conveyed at any previous time ; but if he has conveyed his property fraudulently by a deed of trust, and none of the beneficiaries have accepted its provisions, or assented to it, and if he retains the property in his possession up to the time of his application for the benefit of the law, and has it in his possession at that time, it is his duty to surrender it; because it is plainly assets of the bankruptcy, and, as against the assignee in bankruptcy, the title has never passed out of him ; and as to the assignee, the property is the bankrupt's estate in possession. While it would be the duty of the bankrupt to surrender the property thus situated, his omission to do so would not necessarily prove a fraud, or willful concealment, under the fourth section of the bankrupt law. But the proof offered by the party contesting the bankruptcy was evidence conducing to show such fraud and willful concealment, and ought, therefore, to have been admitted in evidence to the jury.

It is clear that the mere fact that a bankrupt has made a fraudulent conveyance, which does not come within the provisions of the second section of the bankrupt law, does not, of itself, affect the validity of the discharge.—Pearsall v. McCartney, 28 Ala. 110; Gore v. Lawrence, 6 Foster, 484.

That principle we do not mean to controvert. Confining ourselves to the precise question before us, we mean to assert, that the evidence offered, of the fraud in the deed of assignment, its non-acceptance, and the continued possession of a part of the property up to the time of the commencement of the proceedings in bankruptcy, was admissible, as affecting the question of a fraudulent or willful concealment of the bankrupt's property. The party assailing the bankruptcy would not be required to negative the assent of the beneficiaries to the deed, as he proposed to do ; but if the other facts offered should be proved, the *onus* of showing the assent would devolve on the bankrupt.

The judgment of the court below is reversed, and the cause remanded.

RICE, C. J., having been of counsel, not sitting.