KAUFFMAN & RUNGE V. THOS. F. HUDSON & SON.

(Case No. 1658.)

1. ASSIGNMENTS—ACT OF MARCH 24, 1879—CREDITOR HOLDING TWO CLAIMS—ACCEPT-
ANCE OF ASSIGNMENT AS TO ONE CLAIM NO BAR TO AN ACTION AGAINST DEBTOR ON
THE OTHER—Neither the language nor the purpose of the act of March 24, 1879,
relating to assignments for the benefit of creditors, prevents a creditor, who
has two claims, one secured and the other unsecured, against his debtor who
has made an assignment for the benefit of accepting creditors, from accepting
the assignment as to the unsecured claim, and declining to accept as to the
other; and as to any unsatisfied balance of the secured claim, that may remain
after his security has been exhausted, such creditor may maintain an action
against the debtor the same as if no assignment had been made.

APPEAL from Galveston. Tried below before the Hon. Wm. H. Stewart.

The plaintiffs, Kauffman & Runge, sued the defendants, Thos. F. Hudson & Son, on a promissory note for $25,000, dated January 4, 1881, due twelve months after date, with interest from date at the rate of eight per cent. per annum, allowing a credit of $10,000, July 6, 1882, for the proceeds of land embraced in a trust deed given to secure the note and sold by trustees, under the power of sale contained in the instrument.

Defendants pleaded that by acceptance of a statutory assignment made by them for the benefit of such of their creditors as should "consent to accept their proportional share of their estates and discharge them," and the execution of a receipt to the assignee in full of all claims against the assignors, "said note had been fully paid, satisfied and discharged, and plaintiffs were estopped to assert the same."

Plaintiffs, by supplemental petition, under oath, alleged, that, at the date of the assignment and thenceforth continuously, as was well known to all persons interested in the assigned estates, they held two claims against the assignors; one on open account for $2,198.19, past

due and unsecured ; the other, the $25,000 note sued on, secured by trust deed on land, and not due until long after the distribution of the estates assigned ; denied any consideration for the receipt, or any intent or effect thereof, except as a receipt for their dividend of $400.07, paid them, on their open account for $2,198.19, in common with other creditors ; alleged that the receipt was a uniform one, prepared by the assignee and sent for signature to all accepting creditors; and that their acceptance of the assignment related exclusively to their claim, duly filed with the assignee, and distinctly specified in their letter of acceptance, and had no relation to the $25,000 negotiable note sued on, secured by trust deed, and not then, or for a long time thereafter, due and payable.

Defendants, by supplemental answer, charged that if the plaintiffs failed to prove up their note they did so wilfully and to defraud defendants and their other creditors ; that plaintiffs advised the assignment, urged other creditors to accept it, and constantly counseled the assignee in conducting it ; that the existence of the note was at all times well known to the plaintiffs and to the assignee, and that the receipt was intended to cover it.

The case was tried by the court, without a jury, and judgment rendered for defendants.    Plaintiff appealed.

The material facts are set forth in the opinion.    The trial judge's conclusions of law, which form a part of the record, are as follows :

"I hold that the plaintiffs' security furnished by the trust deed has not been impaired by anything that the evidence discloses, but that, after the sales of the assignee, and of the trustee, and purchase of the the trust property by plaintiffs, plaintiffs have no remedy over against defendants for any deficit after the exhaustion of the trust property ; that the proof does not show that it was the intention to hold the defendants liable for any deficit, but that it was the intent, as gathered from all the facts, that the defendants were not liable over personally for such deficit, after the exhaustion of the trust property; that the acceptance of plaintiffs of the assignment, and their release of defendants under their receipt to Wynne, limit the plaintiffs' rights solely to apply the trust property to the payment of their note in suit, as far as it would go, and that the meaning of the plaintiffs' acceptance, under the assignment, was to accept for their unsecured debt, and, after the exhaustion of the trust property, the balance of the note was an unsecured debt, which unsecured portion, when ascertained by the sale of the trust property, occupied precisely the same status as any other unsecured debt of the plaintiffs, or any other creditor, and the acceptance of the assignment was a discharge

from such subsequently ascertained unsecured balance which the trust property failed to realize, just in the same manner and to the same effect as if this subsequently ascertained unsecured balance had been in a separate note. This, I conclude, was the intent of all the parties, under the evidence. And I further hold, from the whole state of the pleadings, and from the evidence, that, although the plaintiffs are not entitled to recover for the unpaid balance of the note in suit, yet it was proper to so frame the judgment against the plaintiffs as not to impair or prejudice, in any manner, the plaintiffs' rights, which they hold under the trust deed, and that the same ought not to be held as *res adjudicata*, in the event of subsequent litigation to contest the validity of plaintiff's title under the trust deed, or under the assignee's deed."

The plaintiffs assigned several errors, but the following two assignments, it is thought, present, substantially, the questions discussed in the opinion:

2. The judgment is contrary to the law, and the court erred in holding that the legal effect of plaintiffs' acceptance of defendants' assignment as as to a past due and unsecured open account was to estop plaintiffs from recovering judgment against the defendants for the unpaid balance on an unmatured and secured negotiable note owing to plaintiffs by defendants at the time of the assignment, but not due until after the distribution of the assigned estates, no claim thereon having been made to or filed with the assignee, and no dividend thereon ever claimed, declared or paid, no fraud with respect to the non-participation thereof in the assignment being practiced towards the debtors, the assignee or other creditors.

4. The court erred in holding that the acceptance and receipt pleaded could have any other legal effect than to discharge the defendants from all further liability on the open account of $2,198.19.

*Robert G. Street,* for appellants.

*Hume & Shepard,* for appellees, on the questions discussed in the opinion, cited: R. S., app., pp. 8, 9, 10, secs. 5, 13, 18; Lilly *v.* Palmer, 51 Ill. 331; Mulford *v.* Peterson, 35 N. J. L. 127; 1 Jones on Mortg., sec. 740; 4 Kent Com., side pp. 101, 102; 2 Washburne on Real Prop., 4th ed. 193-197; 1 Hilliard on Mortg. 480, 488; Lockwood *v.* Sturdevant, 6 Conn. 373; Dickason *v.* Williams, 129 Mass. 182; McRea *v.* Purmort, 16 Wend. 414; Pierson *v.* Hooker, 3 Johns. 68; Stearns *v.* Tappin, 5 Duer 294; Matlack's Appeal, 7 Watts and Serg. 79; Sherburn *v.* Goodwin, 44 N. H. 271, Hyden *v.* Baldwin, 17 Pick.

303; Deland *v.* Amesbury Mfg. Co., 7 Pick. 244; King *v.* Moore, 18 Pick, 376; Parsons *v.* Gloucestershire Bank, 10 Pick. 553; Burrill on Assignments, Bishop, 3d ed. 333; U. S. *v.* Adams, 9 Wall. 554; s. c., 7 U. S. 463; U. S. *v.* Childs, 12 U. S. 232; Van Bokkelen *v.* Taylor, 62 N.Y. 105; Tyson *v.* Dorr, 6 Wharton (Pa.) 256.

ROBERTSON, ASSOCIATE JUSTICE.—The assignment made by Hudson & Son was under the third section of the act of 1879, for the benefit of such of their creditors as would accept their share of the proceeds of the trust and release the assignors. They were indebted at the time to Kauffman & Runge in the sum of $2,198.19, unsecured, and in the sum of $25,000, evidenced by promissory note, and secured by mortgage on real estate. These creditors accepted under the assignment, in general terms, and filed with the assignee a statement of their unsecured demand. In this statement, the debtors were credited with the then value of the secured note, and received a dividend only upon the unsecured debt. Upon the receipt of this dividend, they executed a release to the assignee and assignors, in the form prepared and presented by the assignee, acknowledging "full payment and discharge of all our claims and demands against Thos. F. Hudson & Son and Thos. F. Hudson and Jno. A. Hudson."

They afterward sued for the balance due on the note—the proceeds of a sale of the mortgaged lands having been entered as a credit—and the defendants pleaded the assignment, its acceptance by plaintiffs, and the execution and delivery by them of the release, in discharge of the debt and in bar of the suit. To this answer the plaintiffs replied that the release, except as applicable to the unsecured debt probated against the trust estate, was without consideration, and that its execution, in the comprehensive terms in which it is expressed, was the result of accident and mistake.

The language of the release was broad enough to embrace the demand in suit before it was reduced by sale of the property mortgaged to secure it. In Matlack's Appeal (7 W. & S. 80), the court construed a similar instrument, to relinquish a secured demand, though the creditor held an unsecured claim against the trust estate preferred in the deed of assignment. But, under the terms of the deed, the release could not be applied to the other demand, and the effect of the paper was derived only from its face.

The statute authorizing the character of assignment made by the defendants, itself, discharges the debtor from liability to the assenting creditors, but for the more perfect protection of the debtor, the creditor, when he receives the final dividend, is required to execute

a release. The paper in evidence is, at least, such release as that required by statute. But in this aspect, however expressed, it must be limited to those demands from which the law discharges the debtor when the creditor assents to the assignment. It does not extend the operation, but simply evidences the consummation of the statutory acquittance. The discharge is effected by the law and the facts without the release—the release is a convenient and preservable evidence of these facts. Thus viewed, the scope of the release is to be ascertained by construing the statute.

But, it is contended that this release is not thus limited. There can be no objection to an enlargement, by contract, of the effect of the statutory release. The language of the one in evidence is broad enough to cover the demand in suit—but if not covered by the law, it is embraced in the release, either accidentally or by contract. The defendants pleaded that they knew nothing of the release until long after it was executed—the terms of it were manifestly not broadened to express any agreement or understanding between the plaintiffs and defendants.

There was no contract between the plaintiffs and the assignee. The form of the release was composed and written by the assignee or his counsel, not specially for the plaintiffs, but for all the assenting creditors. The only consideration for its execution by plaintiffs was the dividend upon their unsecured claim. Unless it was the intention of the plaintiffs to make a pure donation to the defendants, the fact that the release is in terms sufficiently comprehensive to embrace the note and mortgage, if they were not discharged by the assent to the assignment, was, as the proof abundantly showed, purely accidental. It was signed by the plaintiffs without scrutiny of the language, and, as to this note and mortgage, entirely without consideration.

Whether the demand sued upon is discharged, depends simply upon the question, whether the assent to the assignment as to the unsecured claim is by operation of law an assent as to the note and mortgage.

The purpose of the plaintiffs to stand aloof from the assignment as to the secured claim is clearly proven, and the court below finds that their retention of the security was known to the other creditors, to the assignee and defendants. The reservation was not secret. The court below also finds that it was not the intention of plaintiffs to assert against the defendants any personal claim for any balance the securities failed to pay. It was supposed by both parties that the mortgaged lands were amply sufficient to pay the note. This accounts for the absence of any manifestation of any intention with respect to a balance, which it was supposed would never result. There was no

proof of a release of any such balance, unless it was discharged by the assent to the assignment.

It has been held by this court that under the thirteenth section of the act, a creditor holding security, not properly called *collateral*, may have it valued by the assignee, and accept for the balance. Keller *v.* Smalley, 63 Tex. 512. His whole claim would then be extinguished; for as much of his demand as his securities are valued at, he, in effect, agrees to look exclusively to his securities, and the balance is discharged by his assent to the assignment.

But it is also held in the same case that he is not bound to submit his securities to the assignee's valuation, but may assert his rights independent of the assignment. If he takes this course, for any balance of his demand not liquidated by his liens, he may, of course, sue the debtors. It would often happen that this balance could only be ascertained, pending the assignment, by the assignee's valuation, for the ordinary remedies might not mature until after the trust estate is completely administered.

This being the right of a creditor who has only a secured claim, we can see no reason for the abridgement of the right of one, who has a secured claim, and also one which is unsecured, and with respect to which he is willing to accept the assignment. He is otherwise forced to stand entirely aloof from the assignment, or, to get the benefits of it as to his unsecured debt, to submit his securities to the assignee's valuation. If he proves his unsecured debt, and refuses to submit his securities to the valuation of the assignee, he is held, on defendants' theory, to forfeit any balance of the secured debt not paid in the liquidation of his liens—unless he is so fortunate as to accomplish their liquidation in time to make proof of the balance and get his dividend upon it.

To give the law this construction, claims of precisely the same character are unjustly and unreasonably distinguished. One creditor, with a lien, may ascertain his unsecured balance by a suit in time to prove the balance, and thus avoid the arbitrary valuation of the assignee—another creditor, with precisely the same character of lien, cannot secure its liquidation, possibly by reason of delays interposed by the debtor, in time to realize a dividend upon his balance. Yet, this balance is discharged without sharing in the trust estate, because the creditor has assented to the assignment as to an independent demand not secured. We cannot agree to this interpretation of the law.

Neither the language nor purpose of the act prevents the creditor,

who has two claims, one secured and the other not, from accepting as to the former, and declining to accept as to the latter. This is precisely what was openly and fairly done by the plaintiffs, as is clearly shown by the evidence. By assenting to the assignment, the plaintiffs have discharged the defendants from all liability for the unsecured debt probated. Upon this claim they have accepted, in full, their proportional share of the trust estate. But, as to the note and mortgage, the rights remained as if no assignment has been made or they had no other claim.

The judgment below is predicated upon a different view of the law, and cannot be sustained on the theory upon which it was rendered.

But defendants advance in support of the judgment another proposition. The assignee sold the lands, subject to the plaintiffs' mortgage, and the plaintiffs became the purchasers for the sum of one hundred dollars, and it is claimed that the mortgage was merged in the fee, and the debt was extinguished by the acquisition of the fund from which it was to be paid. It does not appear that the assignee made any deed to the plaintiffs—the purchase is recited in a bill of sale of personal property made by the assignee to the plaintiffs, put in evidence by the plaintiffs over objection of defendants. It was also proved, that, at the time of the trial, a suit was pending by the defendants against the plaintiffs for all these lands. It is also clear that on the trial the evidence upon this question was not developed.

No such defense was pleaded, and no such issue was passed upon in the court below. It cannot be successfully raised and urged for the first time in this court. The facts proved, which incidentally and accidentally bear upon the question, are persuasive that the plea was not inadvertently omitted.

The judgment below must be reversed, and a judgment will be here rendered, that plaintiffs recover the balance due on the note declared upon and all the costs of this court and the court below.

It is so ordered.

REVERSED AND RENDERED.

[Opinion delivered March 23, 1886.]