SIMMONS HARDWARE COMPANY AND OTHERS v. KAUFMAN & RUNGE.

No. 6299.

1. **Contemplation of Bankruptcy.**—It is now settled that to set aside a transfer on the ground that it was made in contemplation of bankruptcy it must be shown that it was made with intent to defeat the operation of the bankrupt law.

2. **Transfer in Contemplation of an Assignment.**—In order to avoid a transfer or preference on the ground that it was made or given in contravention of the provisions of section 9 of the assignment law (Sayles' Civil Stats., art 65i), the transfer must have been executed or the preference given with the intent then formed to make the assignment.

3. **Same.**—It will not be sufficient that the assignor at the time had the assignment under consideration. See facts.

4. **Purchaser—Bought.**—Construing the language of the last provision in section ·9 of assignment law—"But if it shall appear in such action that the purchaser of any of such property bought the same in good faith," etc.—*held*, that the word *bought* is used as the equivalent of *purchase* in its enlarged sense, and that under the provision mortgagees as well as the purchasers of the absolute title were intended to be protected.

5. **Valuable Consideration.**—The extension of a debt and the surrender of a security (as of former mortgage) constitute a valuable consideration for a mortgage executed to secure the debt.

6. **Mortgage, Not Made to Hinder, etc., Creditors.**—See facts found by the court attending a mortgage held to negative any unlawful intent under the statute.

7. **Equity of Redemption Subject to Sale.**—When a debtor has mortgaged his property the equity of redemption is subject to levy and sale at the suit of other creditors.

8. **Conflicting Testimony.**—Where the testimony is conflicting the finding of the fact by the court will not be revised. It is entitled to like consideration as a verdict of the jury.

9. **Testimony of Counsel.**—An attorney who represented the mortgagee testified that the matter of the assignment had never been alluded to until several days after the mortgage was executed, and after the assignor had failed to arrange with his creditors, and that he then had told the assignor he could make an assignment, and that witness had drawn the assignment. *Held*, not to be error.

10. **Parol Testimony to Result of Litigation.**—A witness, over objection, testified that since the assignment one tract of land included in the assignment, valued at. $12,000, had been lost to the assignor. *Held*, not to be ground for reversal. The testimony was immaterial, as any excess in the debt secured would be subject to other· claims.

11. **Mortgagee Not Precluded from Urging Unsecured Claim.**—In the petition to set aside a mortgage securing a creditor for, among other reasons, that the mortgagee had proved up an unsecured account, and had assented thereby to the assignment,. *held*, that exceptions to said allegation were properly sustained.    65 Texas, 615.

APPEAL from Milam.    Tried below before Hon. W. E. Collard. The opinion discloses the case.

*Bassett, Muse & Muse,* for Wolfe, the assignee, appellant, cited Assignment Law; Waterman v. Silberberg, 67 Texas, 100; Collins v. Warren, 63 Texas, 315; Roberts v. Yarboro, 41 Texas, 452; Brown v. Hedge Co., 64 Texas, 396; Traylor v. Townsend, 61 Texas, 144; Oppenheimer v. Half,. 68 Texas, 409; Cryder v. Garland, 11 S. & M., 138; Kaufman & Runge v.. Morriss, 60 Texas, 119; Stone v. Day, 69 Texas, 13.

*E. L. Anthony* and *A. G. Wilcox,* for Simmons Hardware Company and others, appellants.

*Robert G. Street,* for appellees, cited Waterman v. Silberberg, 67 Texas,. 100; Keller v. Smalley, 63 Texas, 512; Bassett v. Rosworthy, Wh. & Tudor's Leading Cases, and note 34; Padgett v. Lawrence, 10 Paige, 170;. Downing v. Blair, 75 Ala., 216.

GAINES, ASSOCIATE JUSTICE.—The Simmons Hardware Company and other creditors accepting under a statutory assignment made by Thomas F. Hudson & Son brought this suit in the name of the assignee C. E. Wynne, who had refused to bring it, against Kaufman & Runge and others to set aside certain deeds of trust alleged to have been executed by the assignors in contemplation of the assignment.    The assignee Wynne having been removed and John B. Wolfe appointed in his stead, the latter intervened in the suit as a party plaintiff, and adopted the allegations and joined in the prayer of the plaintiffs' petition.    The court thereupon dismissed the creditors from the case and allowed it to proceed in the name of the substituted assignee, to which the creditors excepted.

Upon the trial the court gave judgment for the defendants, and the assignee and creditors have appealed.

The appealing creditors assign as error the action of the court in dismissing them from the case.

It seems to have been intended by the statute that suits brought to set aside conveyances and preferences in fraud of its provisions should always be brought in the name of the assignee, and that in the event he refused,

the creditors surely had the right, by indemnifying him against the payment of the costs, to use his name in prosecuting the action, without becoming parties themselves.   Sayles' Civ. Stats., art. 65.   But whether its purpose was to preclude the creditors from joining in the action in any case, we need not decide.

In this case the petition for intervention filed by the second assignee is signed by the same attorneys who represented the creditors, and by adopting the allegations and prayer of their petition, presented to the court for adjudication precisely the same case.   From this it appears that Wolfe and the creditors were making common cause; that there was no conflict of interest between them, and that they did not differ either as to the ground of action or the mode of procedure.   Certainly the assignee was authorized by the statute to prosecute the suit and to represent the interest of the creditors, and a judgment for or against him was equally conclusive as if they had also been before the court.

It is not shown that the creditors have been injured or could have been prejudiced by the action of the court, and hence their dismissal is no ground for the reversal of the judgment.   How could their remaining as parties to the record by name have affected the result of the suit?

The cause was submitted to the court without a jury, and a judgment was rendered for the defendants.   The judge filed his conclusions of fact and law, and we here copy so much of the findings as we think necessary for the purposes of this opinion:

"Conclusions of fact:

"1.   On the 4th and 10th of January, 1881, Thomas F. Hudson, one of the firm of merchants composed of Thomas F. Hudson and John A. Hudson, executed the two deeds of trust described in plaintiffs' petition to secure defendants' note of $25,000 executed on the 4th day of January, 1881, by Thomas F. Hudson & Son to Kaufman & Runge, said deeds of trust embracing the lands described in plaintiffs' petition.   The $25,000 was a valid debt.

"2.   On the 22d day of January, 1881, Thomas F. Hudson & Son, as partners and as individuals, made a statutory assignment for the benefit of accepting creditors, appointing C. E. Wynne as assignee.

"6.   The value of the lands embraced in the deeds of trust was at the time of the execution of the deeds of trust $34,000—$9000 in excess of the debt secured; but I do not find that the value of the lands was, against all contingencies, more than enough to secure the debt.   The valuation put upon the land above is what witnesses state the land to be worth, and I so find.   What the land would have sold for at public vendue, if sold in parcels in the counties where it was situated, the evidence does not show.   It does not appear that if there should be an excess it was to be reserved for Hudson & Son at this time.

"7.   At the time the deeds of trust were executed, Thomas F. Hudson

& Son were in debt to other persons in large amounts, and their liabilities were much greater than their assets; they were in failing circumstances, and Kaufman & Runge had sufficient knowledge of their affairs to put a man of ordinary prudence upon inquiry as to their failing condition. The deeds of trust were executed by Thomas F. Hudson in good faith to secure Kaufman & Runge in their debt for $25,000, and it was his intention to prefer Kaufman & Runge to other creditors by giving them the security. Thomas F. Hudson, at the time of the execution of the trust deeds, expected to be able to settle with creditors by compromise, and he expected Kaufman & Runge to help him to do this; but upon failure to make settlement with other creditors by compromise, he intended to make an assignment under the assignment law of this State, both as an individual and as a firm. At the time the trust deeds were executed it was the intention of Thomas F. Hudson to assign upon the contingency stated—that is, upon the failure to settle with creditors. It was not until after he failed to settle with creditors, on the 22d day of January, 1881, that Hudson fully determined to assign. The contingency happened and he assigned, and so did the firm. I do not find that Kaufman & Runge knew of the design of Thomas F. Hudson & Son, or either of them, to assign upon the contingency stated at the time of the execution of the deeds of trust; and I do not find that they had reason to believe it. Kaufman & Runge were acting in good faith to secure their debt."

It is assigned that the court erred in its conclusions of law founded upon its findings of fact and in giving judgment for the defendant; and it is submitted that the deeds of trust were executed by Hudson & Son in contemplation of the assignment within the meaning of the assignment law, and that Kaufman & Runge being mere creditors the conveyances were inoperative under the act, although they may have had no notice.

So much of the statute in question as relates to these questions reads as follows: "Sec. 9. (1) All property conveyed or transferred by the assignor previous to and in contemplation of the assignment with the intent or design to defeat, delay, or defraud creditors, or to give preference to one credit over another, shall pass to the assignee by the assignment, notwithstanding such transfer. * * * But if it shall appear in such action that the purchaser of any such property bought the same of the assignor in good faith and for a valuable consideration, and without any reason to believe that the debtor was conveying or transferring the same with the intent or design aforesaid, such purchaser shall be held to have acquired as against the assignee and creditors aforesaid a good and valid title to said property."

Does this section apply only to conveyances and preferences after a fixed intention has been formed to make an assignment, or do they apply also to such as are made or given after an intention has been formed to assign in the event of the happening of some contingency? We find no

similar provision in the assignment laws of any of the States, and hence have found no decision bearing directly upon the point. The words "in contemplation of bankruptcy" appear in the bankrupt laws of the United States, and the words "in contemplation of insolvency" are found in the insolvent acts of some of the States. The phrase "in contemplation of bankruptcy" is also used in the statutes of England, and has been the subject of frequent adjudication in the courts of that country. The older decisions there hold that if a debtor gives a preference, knowing that he is insolvent, he must be held to have contemplated bankruptcy, which is the probable result. Poland v. Glyn, 2 Dowl. & R., 310; Pulling v. Tucker, 4 Barn. & Ald., 382. But the later decisions in the courts of Westminster Hall have established a more restricted construction, and it is now settled that to set aside a transfer on the ground that it was made in contemplation of bankruptcy it must be shown that it was made with the intent to defeat the operation of the bankrupt act. Morgan v. Brundrett, 5 Barn. & Adol., 289; Fidgeon v. Sharpe, 5 Taunt., 545. The doctrine of these later cases has been adopted by courts of the highest authority in this country, and we think the meaning of the words may be deemed settled in accordance with that construction. Jones v. Howland, 8 Metc., 377; Buckingham v. McLean, 13 How., 150; In Re Craft, 6 Blatch., 177.

We may therefore conclude that in order to avoid a transfer or preference on the ground that it is made or given in contravention of the pro-visions of section 9 of the assignment law, the transfer must have been executed or the preference given with the intent then formed to make the assignment, and that it will not be sufficient that the assignor at the time had the assignment under consideration.

But this does not relieve us of our difficulty. Here the intent to assign was formed when the mortgages were executed, but it was contingent upon Hudson & Son's inability to compromise with their creditors. We have found no case like this, and doubt if there be one in the books. Is a mortgage executed by parties who subsequently assign, after they have determined to make an assignment—contingent, however, upon the event of another transaction—a transfer or preference in contemplation of the assignment within the meaning of the statute? Such is the question, but we do not think it necessary to decide it. Should it be answered in the affirmative, still we think the mortgagees in this case protected under the findings of the court that they had no notice that the deeds of trust were executed in contemplation of the assignment.

The language of the last provision in section 9 of the assignment statute is peculiar: "But if it shall appear in such action that the purchaser of any such property bought the same in good faith," etc. If we are to take the word purchaser in its technical sense, and in the sense in which it is used in the statutes of registration and of frauds, it would clearly

comprehend the mortgages in this case. Halbert v. McCulloch, 3 Metc., 466; Wethrill's appeal, 3 Grant's Cases, 281; Lancaster v. Dolan, 1 Rawle, 231; Porter v. Greene, 4 Ia., 571; Seavers v. Delashmutt, 11 Ia., 174. But the word *bought* is not a technical term, and has a far more restricted meaning. If the signification of the word *purchaser* is to be controlled by the latter term, then a mortgage is not included. One who has taken a mortgage upon property, though he may be a purchaser, can not be said to have *bought* according to the literal meaning of that word. What then is the construction of the language? Did the Legislature mean to except only such persons as had bought property of the assignor, paying value and without notice? Or did they use the word *bought* as the equivalent of *purchase* in its enlarged legal sense? We think the latter the better construction. We take it that the equity of a purchaser who has bought and paid for the property, absolutely without notice of an intent to assign, is no higher than that of a mortgagee without such knowledge who has parted with his money, taking merely a lien upon the property to secure its repayment. The Legislature did not, we think, intend to make a distinction in cases in which the equities are the same. It is not to be presumed that it designed to make a law manifestly inequitable and unjust. We are of opinion, therefore, that the mortgagees as well as the purchasers of the absolute title were intended to be protected by the provision under consideration.

Kaufman & Runge, as consideration for the deeds of trust, not only extended the debt but also released a former mortgage. Having surrendered a previous security they are purchasers for a valuable consideration and clearly within the equity of the statute. See cases cited in Steffian v. Bank, 69 Texas, 513.

But it is also submitted that the deeds of trust in question were made to hinder, delay, and defraud other creditors, and that this conclusion is inferable from the findings of the court. Such, however, is not our construction of the conclusions of fact. On the contrary, we think they expressly negative such intent.

The appellants further complain in their second assignment of error that the court did not distinctly find the issue of fraud. The court specifically finds that the notes secured were for a valid indebtedness; that the value of the lands mortgaged was not more than fully to secure the debt; that the mortgagors executed the deed in good faith to secure Kaufman & Runge, and with the intention merely to prefer them by the security; that it did not appear that the excess, if any, after paying the debts was to be reserved to Hudson & Son; and that Kaufman & Runge were acting in good faith to secure their debt. We think this statement clearly shows that in the opinion of the court no fraud was proved, and that the findings upon the issue of fraud are full and sufficient. The necessary effect of the preference was to hinder and delay other creditors,

but it is settled by the court that so far as the statute of frauds is concerned this is legitimate and not fraudulent. The equity of redemption in the mortgaged property being subject to levy and sale at the suit of other creditors, the excess after paying the secured debts was not placed beyond their reach.

What we have already said we think sufficient to dispose of so much of the third assignment of error as calls in question the sufficiency of the judge's findings. By that assignment it is also complained that the conclusions of fact are "against the great preponderance of evidence, if indeed they be not wholly without evidence to support them." The evidence was directly conflicting as to the question whether Kaufman & Runge had knowledge of Hudson & Son's intention to make an assignment at the time the deeds in trust were executed. Thomas F. Hudson swore positively that he stated in Runge's presence that he intended to assign. This Runge as positively denied, and denied also all knowledge of that intention. Both witnesses were submitted to long and tedious cross-examinations. The issue depended mainly upon which of them was to be believed. The court below, in the light of the whole evidence, having found in favor of the appellees, we have found nothing in the record to justify us in disturbing its conclusion. It is entitled to the same weight as the verdict of a jury.

We are of the opinion that the court did not err in admitting the testimony of R. G. Street, Esq., to the effect that in conducting the negotiations for the deeds of trust from Hudson & Son to secure Kaufman & Runge the subject of an assignment was never mentioned, and that the matter was never raised between the parties until he told Thomas F. Hudson that he could make an assignment. This was after Hudson had failed to come to an agreement with his creditors, and several days after the deeds of trust had been executed. Mr. Street testified that in all the transactions he was the counsel for Kaufman & Runge, and did not represent Hudson & Son, and that although he subsequently drew the assignment, he did it at the instance of Kaufman & Runge. It may be a serious question whether or not after the witness undertook to prepare the deed of assignment he should be considered as of counsel for the assignor. But we see nothing in his testimony to establish that relation until after the conversation about which he was permitted to testify.

During the progress of the trial Judge McIver, a witness for appellees, testified as to the value of the lands included in the mortgage, and it was objected to his testimony that it was incompetent, and that he was permitted to give his opinion upon facts not stated, and that it was improper for him to show the result of litigation by parol. The witness stated that one of the tracts of land embraced in the deeds of trust was at the time of their execution involved in litigation, and had been since lost to Hudson & Son. He valued the tract at $12,000, and testified that when the

deeds in trust were executed the title was regarded good. We do not think that the admission of this evidence has operated to the prejudice of the appellants on the trial. Without it the result would have been the same.

If Kaufman & Runge, instead of merely taking security for their debt, had received an absolute title to the property in satisfaction of their claims, then the question of value would have been material.

Knowing their debtors were insolvent, they could in the latter case have received only property reasonably sufficient in value to cover their indebtedness, unless there had been a distinct agreement which secured the appropriation of the excess to payment of other creditors. Oppenheimer v. Half, 68 Texas, 409; Elser v. Graber, 69 Texas, 222. But as mortgagees they occupy a different ground. They had only a lien for the amount of their debt, and this was all they could claim in any event. The excess over a sufficiency for this purpose is still subject to legal process for the satisfaction of other creditors; and hence, in a legal point of view, it is a matter of no moment to such creditors whether this excess is greater or less. It is not placed beyond their reach, and hence they are not defrauded.

The fifth assignment is that the court erred in sustaining an exception to the fourth paragraph of the petition. The leading allegation in that paragraph is that in addition to the note for $25,000 Kaufman & Runge had an open account against Hudson & Son for the sum of $2198.19, which they proved up against the assigned estate and upon which they received a dividend; and it concludes as follows: "And your petitioners aver and charge that by reason of the premises the said claim of said defendants, based on said note, with the deeds of trust by which the same was secured, if otherwise valid, was discharged and became of none effect."

The exception of defendants is as follows: "They except to section 5 and paragraph 1 of section 6 of said amended original petition, for that it was competent for defendants to accept the assignment as to their past due open account, without said acceptance relating to or affecting their secured and unmatured claim against the assignors." The evident purpose of the averments in paragraph 5 of the petition was to set up that the claim of Kaufman & Runge based on their note and mortgage had been discharged by their acceptance of the assignment as to their unsecured debt. It was excepted to on this ground alone, and could have been sustained upon no other. So much of the averments as set up this defense were properly stricken out. Kaufman v. Hudson, 65 Texas, 716.

There are other vague allegations in the paragraph that the note and account did not represent the actual indebtedness from Hudson & Son to Kaufman & Runge, "but were for the most part simulated and fraudulent," etc. That the court did not intend to strike out any portion of the petition that alleged fraud either in the notes or mortgages, is apparent,

and if appellants desired to retain and rely upon such allegations they could have restored them by a trial amendment. Being intermingled with allegations which were wholly irrelevant, and the last averment in the paragraph showing that its object was to set up the acceptance of the account as a discharge of the note, the court did not err in striking it out altogether.

There is no error in the judgment, and it is affirmed.

*Affirmed.*

Delivered April 24, 1888.

NOTE.—This and the next three cases were omitted from their regular order.