WILLIAM MACKINTOSH, Garnishee and Claimant of property attached as of the goods, &c., of WM. ROBINSON, vs. THOMAS CORNER, B. M. CORNER and GEORGE W. CORNER.

*Assignment for the benefit of Creditors — Attachment — Practice in the Court of Appeals.*

A deed conveying real and personal property to a trustee for the benefit of creditors, does not require for its validity, an affidavit by the grantee that the consideration is true and *bona fide*.

Where there is an assignment by a debtor for the benefit of his creditors generally, no particular creditor is concluded by taking under the assignment, from impeaching any of the debts attempted to be secured by it, and showing fraud and collusion in such of them as may stand in his way, and the payment of which would operate to his prejudice.

But the fact that some of the preferred debts provided for in the assignment are fraudulent, and therefore void, does not render the assignment itself a nullity; it is still good as to all debts that are *bona fide*.

Where a debtor makes an assignment of his property, real and personal, for the benefit of his creditors generally, and the deed is properly executed and recorded in due time, and a day or two after its execution, the trustee takes possession of the property, the same is not liable to attachment at the instance of a creditor.

Because a party omits to except to the ruling of the Court in granting a prayer which instructed the jury to disregard a deed of assignment as evidence, so far as it concerned the personal property included therein, he is not to be taken as having acquiesced in that ruling, and therefore precluded from claiming on appeal, a reversal of the judgment below for the errors committed in ruling upon the other prayers predicated of the assignment as in evidence.

APPEAL from the Circuit Court for Baltimore County.

The appellees having obtained judgment in the Superior Court of Baltimore city against William Robinson, issued an attachment thereon to the Sheriff of Baltimore county, who on the 15th of March, 1860, levied upon a farm in said county, and upon certain personal chattels. On the

same day he laid the attachment in the hands of Hugh Horner, residing on the farm and who had been employed by Robinson as his manager.   On the 20th of May, following, the attachment was laid in the hands of the appellant.   By order of the Court the personal property attached was sold by the Sheriff.   Afterwards, on the 28th of May, the appellant appeared and claimed the property attached, in virtue of a deed to him from Robinson, dated the 11th of February, 1860, which was recorded in the office of the clerk of the Superior Court of Baltimore city on the same day, and on the 13th in the office of the clerk of Baltimore county.   This was a deed conveying all the real and personal estate of the grantor in trust for the benefit of his creditors.   The appellant specially traversed the possession of Robinson at the time of the seizure; at the time when the attachment came to the hands of the Sheriff, and also at the time of the issuing of the attachment.

*Exception:* At the trial the plaintiffs proved through the appellant that shortly after the execution of the deed, by Robinson to him, he took possession of the property by employing Horner and other hands on the place; and that this arrangement took place between the 12th and 14th of February, 1860; that he gave Horner instructions and paid him the same wages which Robinson had paid him; and that he appointed two persons to appraise the property, who made an appraisement and inventory of the personal property, shortly after the date of the assignment.

The plaintiffs also proved by the deputy Sheriff who laid the attachment, that he levied on the property, as the property of the defendant, Robinson; that he told Horner what he wanted, who made no objection, but pointed out his own horse, and claimed its exemption.

The appellant then offered to read to the jury the deed from Robinson to him.   The deed was read subject to exception; and the appellant then proved that the deed was executed and delivered on the day of its date, and was

recorded as endorsed thereon; and that he took charge of the property, by notifying the parties, who had any of it in their hands. He proved the employment of Horner as his agent; and that he took immediate steps to sell, and advertised the property for sale on the 21st of March; but the sale was prevented by the seizure under the attachment.

The plaintiffs then offered in evidence certain mortgages and deeds of the real estate attached.

The plaintiffs asked the Court to instruct the jury as follows:

1st. That the deed from William Robinson to William Mackintosh, offered in evidence by the defendant, cannot operate to convey the title of the personal property named in the schedule returned by the sheriff in this case, as against the creditors of William Robinson, being such at the time of the execution of said deed.

2d. That if the jury find that said deed was executed by William Robinson with intent to delay, hinder or prevent the plaintiffs and other creditors in the collection of the debts due them by said William Robinson, then said deed is void as against the creditors of William Robinson, who were such at the time of its execution, even though said deed was executed in proper form and regularly recorded, and even if there were a delivery of the property under it before the levying of the attachment by the sheriff.

3d. That the defendant is not entitled to the personal property named in the sheriff's schedule, from any evidence of delivery which has been offered, disconnected from said deed from Robinson to Mackintosh.

4th. That the title to the personal property mentioned in the schedule offered in evidence, did not pass to the trustee, unless the jury shall believe that there was, previous to the levy of the attachment by the sheriff, a delivery of such personal property from Robinson to Mackintosh.

5th. That the deed from Robinson to Mackintosh, as testimony tending to affect the title of the personal property des-

cribed in the schedule returned by the sheriff in this case, must be disregarded by the jury.

The Court granted the first, second, third and fifth of these prayers, and rejected the fourth.

The claimant then offered the following prayers:

1st. If the jury believe that the property attached in this case, prior to and on the 11th of February, 1860, belonged to William Robinson, and that he executed and acknowledged the deed offered in evidence, and that said deed was recorded in the office of the clerk of the Superior Court of Baltimore city within twenty days from the time of the execution thereof, and that said Robinson resided in said city, and that said deed was recorded in the office of the clerk of the Circuit Court for Baltimore county within six months from its date, and that the real estate mentioned in the schedule was situated in said county; that then said deed is a valid deed to transfer all of said property, both real and personal, to William Mackintosh, for the benefit of the creditors of said Robinson, and they must find for the claimant and garnishee.

2d. If the jury shall find the facts contained in the first prayer, and shall further find that within a day or two after the execution of the deed, the said William Mackintosh took charge of the said property, and had the same in charge when the attachment was issued, then they must find for the claimant and garnishee.

3d. That if from the evidence the jury believe that Hugh Horner was employed by William Mackintosh, trustee for Wm. Robinson, as his agent, and as such had possession of the goods and chattels in the schedule mentioned, then the possession of the said Horner is the possession of the said Mackintosh in law.

4th. That it is incumbent on the plaintiffs to show affirmatively that the property levied upon under the writ of attachment at the time of the issuing thereof, belonged to the defendant in the judgment, William Robinson; and that unless the jury shall believe from the evidence that the said property

belonged to William Robinson at the time of the issuing of the said attachment, they must find for the claimant and garnishee.

5th. That the several deeds of mortgage from Wm. Robinson to Hanson Robinson, to H. K. Chase, to Joshua K. Hitchcock, and to John Brooks, as also the deed from D. C. H. Emory, trustee, to Hanson Robinson, and from Hanson Robinson to Vincent T. Shipley, and also the proceedings for the sale of the property so conveyed by D. C. H. Emory, trustee, to Hanson Robinson; all of which were read to the jury, subject to exceptions, are not evidence and must be disregarded by the jury.

The Court granted the third and fourth prayers of the claimant, and rejected his first, second and fifth.

To the ruling of the Court, in granting the first, second and third prayers of the plaintiffs, and rejecting the first, second and fifth prayers of the claimant, he excepted.

The verdict was for the claimant as to the real estate; but as to the goods and chattels, the jury found that they were the property of the defendant, and were so at the time of laying the attachment. Judgment was accordingly entered for the plaintiffs. The claimant appealed.

The cause was argued before BARTOL, C. J., MAULSBY, MILLER, ALVEY and ROBINSON, J.

*William Schley*, for the appellant.

The first prayer of the plaintiffs asserts the absolute invalidity of the deed, as against the creditors of the grantor, to convey the title to the personal property.

The 51st section of the 24th Article of the Code does not apply to a deed of this kind. And an affidavit was not necessary, as was supposed by the appellees, to its validity. In the first place, the term "bill of sale," as used in this section, is synonymous with *mortgage*. It does not apply to a case where the grantor parts with the property absolutely, with-

out any reservation of the equity of redemption; gives up both title and possession, and devotes the property, irreclaimably, to the use of other persons. Under the head " bills of sale," in the 39th and following sections, provision is made for cases in which the owner still retains dominion over the property, contrary to the tenor of the deed; or reserves the right of redemption of the property, merely incumbering it with a charge or lien for the benefit of the grantee.

The case of *Stockett vs. Holiday,* 9 *Md.,* 480, 492, 499, establishes that a deed of trust, embracing real and personal property, is not a bill of sale requiring an affidavit.

Even if the failure of Mackintosh to take *personal* possession, prevented him from claiming that *he* was himself in possession, *in fact,* when the attachment was laid, still it was fully proved that *Robinson* was not in possession after the 14th of February; and more definitely after the 2d of March; and the 39th section only applies to a case where " the vendor, mortgagor or donor," remains in possession. But the execution, delivery and recording of the deed in Baltimore city, (the domicil of Robinson,) operated a legal transmutation of possession to Mackintosh; and the subsequent possession of Horner, as *his* agent, clothed Mackintosh with possession in fact.

The granting of the plaintiffs' third prayer was error; it affirmed, in fact, that *no* evidence of delivery was offered. It *assumed* that the deed, without actual corporal delivery, was invalid; and *affirmed* that there was no evidence of delivery independently of the deed. There was proof not merely of constructive delivery but of actual transmutation of possession. *Hall & Loney vs. Richardson,* 16 *Md.,* 396; *Clary vs. Frayer,* 8 *G. & J.,* 418; *Atwell vs. Miller,* 6 *Md.,* 18; *Van Brunt vs. Pike & Ward,* 4 *Gill,* 270.

The plaintiffs' second prayer really affirms that a debtor reserving nothing, is not at liberty to make a deed of trust otherwise unobjectionable, if his intent was to thwart a selfish, remorseless creditor, in his eager efforts to get priority. This prayer is not law, and was improperly granted.

Mackintosh, Garnishee and Claimant, *vs.* Corner, *et al.*

The plaintiffs' fifth prayer, which was granted, instructed the jury that the deed was invalid as to the personal property. This was certainly erroneous.

*Arthur W. Machen* and *S. Teackle Wallis*, for the appellees.

The 39th section of the 24th Article of the Code explicitly declares that " no personal property of any description whatever, *whereof the vendor, mortgagor or donor shall remain in possession*, shall *pass, alter* or *change*, or *any property thereof be transferred* to any purchaser, mortgagee or donee, UNLESS by *bill of sale*, or mortgage, acknowledged and recorded " as therein provided; the 51st section of the same Article declares that *no bill of sale*, or mortgage, of personal property shall be valid, except as between the parties, unless the bargainee, vendee or mortgagee, (Act of 1847, ch. 305; Act of 1846, ch. 271,) or some one of them, shall make the affidavit required to be made by mortgagees of real estate; it is clear that every instrument contemplated in the 39th section is within the purview of the 51st section—all the sections indeed, 39–51 inclusive, are annexed together by the general subtitling " bills of sale; " and it is, therefore, the necessary result of the statute law of the State, that without, or until, a visible and actual transfer of the possession has taken place, the property in chattels personal cannot pass as against creditors, without a bill of sale, acknowledged, sworn to and recorded as provided in the law.   *Bryan vs. Hawthorne*, 1 *Md.*, 519, 524.

At common law the property in a chattel might, as against third persons as well as *inter partes*, be conveyed either by an actual delivery of the article to the donee, or by a deed of gift.   But the effect of the Act of ·1729, ch. 8, sections 5, 6, was so far to alter the common law in Maryland as to make delivery necessary in all cases, (as against third parties,) unless the deed was acknowledged and recorded as required by the Act; to which the Act of 1846, ch. 271, (Code, Art. 24, sec. 51,) superadded the further requisite of an affidavit.

*Irons vs. Smallpiece*, 2 *B. & Ald.*, 551; *Shower vs. Pilk*, 4 *Exch.*, 478; *Bryan vs. Hawthorne*, 1 *Md.*, 519.

The provisions of these statutes—the Act of 1729, ch. 8, secs. 5, 6, and 1846, ch. 271—when applicable, operate as much in favor of judgment creditors as of *bona fide* purchasers. The former statute was declared to have been *intended* for the protection of creditors. *Gough vs. Edelen*, 5 *Gill*, 103. The two together establish a rule of conveyance for the protection of *all* persons, except the grantor. *Cockey vs. Milne's Lessee*, 16 *Md.*, 207.

The term "Bill of Sale," which is of high antiquity, and had a well understood signification before the passage of the Act of 1729, comprehends every deed by which property in goods and chattels is conveyed; it is synonymous with "assignment by deed of chattels personal."

In *Fouke vs. Fleming*, 13 *Md.*, 392, the Court of Appeals evidently held that a deed of trust of chattels, acknowledged and recorded in accordance with the Act of 1729, but unaccompanied by delivery, and destitute of the affidavit, would have been ineffectual but for the (temporary) repeal of the Act of 1846 by the Act of 1856, ch. 154.

ALVEY, J., delivered the opinion of the Court.

This is an appeal from a judgment of condemnation in an attachment proceeding, wherein the appellant made claim to the property attached, as trustee for the benefit of the creditors of the defendant, by virtue of a deed of trust executed on the 11th of February, 1860.

The deed is one that conveys all the property of the debtor, and provides for creditors generally, after the payment of the trust expenses, and all lien debts, giving preference to those only who will release the debtor within a given time. Such deed, by the 13th section of Article 48 of the Code, is declared valid, and is not liable to be set aside either at the suit of any insolvent trustee, *or at the suit of any creditor*. The preference given is such as is not only allowed by statute, but by

the common law; it being well settled that a debtor in embarrassed circumstances may prefer one creditor to another; and the exaction of a release is but a condition upon which such preference is made.

But with regard to the deed in this case, it is supposed that because there is no affidavit appended to it of the *bona fides* of the consideration, it is therefore void as to the personal property, as against creditors, under the 51st section of the 24th Article of the Code. That, however, is a mistake. The requirement of the affidavit is only in those cases of transfer of personal property contemplated by the 39th section of the same Article, where the vendor, mortgagor or donor shall remain in possession of the property conveyed, and the conveyance is adverse to the creditors generally of the grantor. The affidavit in such case being required for the protection of creditors, and *bona fide* purchasers without notice, there could be no reason in requiring it to a conveyance like the present. In cases of this character the consideration for the. assignment is the preëxisting obligation to pay debts generally, and there needs no proof of its *bona fides* or sufficiency, and is not therefore within the meaning and intent of the law. As against the trustee, claiming for the benefit of all the creditors, certainly no creditor of the grantor can allege himself to be prejudiced by the want of the affidavit. The deed is for his benefit, in common with all the other creditors; and although preferences are made in the order and priority of payment, no particular creditor is concluded by taking under the assignment from impeaching any of the debts attempted to be secured by it, and showing fraud and collusion in such of them as may stand in his way and the payment of which would operate to his prejudice. Hence, if it be true as alleged in this case, that the prior mortgage debts are collusive and fraudulent, and should not therefore be paid, it will be competent to the appellees, and others in like position, to show such fraud and collusion, and thus defeat those claims as against the trust fund arising under

the assignment. But it by no means follows that because some of the preferred debts may be fraudulent, and therefore void, that the assignment itself, intended as it is for the benefit of all the creditors, should be declared a nullity. Some of the debts claiming priority of payment may be founded in fraud, and still the general assignment be good as to all debts that are *bona fide*. Indeed, it is the duty of the trustee under such an assignment, as it is the duty of an insolvent trustee, to resist and defeat all claims founded in fraud, and which would operate to the prejudice of *bona fide* creditors; it not being supposed that the trustee accepts such a trust except for real and *bona fide* creditors.

That such an assignment as the present is not within the meaning of the 51st section of the 24th Article of the Code, in regard to the affidavit, has been recently decided by this Court, in the case of *Hoopes vs. Knell*, 31 *Md.*, 550; and as the instrument has been regularly executed, acknowledged, and recorded in due time to be effective to convey title to personal property as well as real, the personal effects thereby embraced were not subject to attachment and condemnation, at the suit of the appellees, creditors of the grantor at the time of making the assignment, and therefore the judgment appealed from is erroneous; the question of the particular errors upon which such judgment is founded being presented to this Court by the prayers which were granted or refused by the Court below.

The first and second prayers of the appellees, which were granted, were both clearly erroneous. The first is based upon the theory that the deed of assignment is intrinsically void for the want of the affidavit; and the second is founded upon the equally fallacious theory that such an assignment could operate to hinder and delay creditors, within the Statute of 13 Elizabeth.

The first, second and fifth prayers of the appellant, which were rejected, were all correct as applicable to this case and should have been granted.

Mackintosh, Garnishee and Claimant, *vs.* Corner, *et al.*

But, notwithstanding, the errors committed by the Court below in reference to these several prayers, and to the rulings in regard to all of which the appellant excepted, it is contended, that because he did not also except to the ruling of the Court in granting the appellees' fifth prayer, whereby the jury were instructed to disregard the deed of assignment as evidence, so far as it concerned the personal property, the appellant is to be taken as having acquiesced in that ruling, and is therefore precluded from claiming a reversal of the judgment for the errors committed in ruling upon the other prayers, predicated of the assignment as in evidence. To this proposition, however, we cannot accede. It is no doubt true, if it appears that a party has conceded the correctness of an instruction, or a proposition of law, and the case has been tried in accordance with it, he will not be heard in this Court to controvert what he has admitted and made the rule of decision in the Court below. But such is not the condition of this case. Here, it is true, the appellant does not appear to have excepted to the granting of the fifth prayer of the appellees, but it is equally true that it nowhere appears that he conceded the correctness of the Court's ruling in that respect. And though a party may not except to all the rulings in which there is error, it is not to be said that he shall therefore be denied the benefit of the exceptions that he does take. It is very clear that if the appellees' first and second prayers had been rejected, and the first and second of the appellant's granted, the fifth prayer of the appellees could not have been ruled as it was by the Court below. The granting of that prayer was, therefore, but the result of the errors of which the appellant complains, and for which he is clearly entitled to have the judgment of the Court below reversed.

*Judgment reversed.*