## Isaac Haas et al. v. J. L. Kraus.

### No. 6720.

**Fraudulent Conveyance—Charge.**—Creditors of an insolvent debtor attached his stock of goods. A few hours prior to the levy of the attachments the debtor had executed a transfer of all his stock, notes, and accounts to a trustee, who at once took possession, with power to sell and dispose of the goods "on such terms as to him may seem best, and full power to collect said notes, etc."—the proceeds, after expenses, to be paid, first, $715 and interest to a brother in Chicago, and second, a debt of about $2600 with interest to the State National Bank of El Paso; the trustee to manage and sell the property and collect said notes, etc., under the direction of the officers of the bank. It appeared that the estimated value of the goods and the claims was in excess of the indebtedness secured. The trustee claimed the goods. *Held:*

1. It was error in the court to refuse to charge upon the issue that the conveyance was fraudulent in attempting to delay creditors.

2. The court could not charge that the conveyance was fraudulent on its face.

3. The jury could pass upon the conveyance with the circumstances in evidence and determine the fact whether fraudulent.

APPEAL from El Paso. Tried below before Hon. T. A. Falvey. The opinion states the case.

*Millard Patterson* and *Bailey, Hunter & Foster,* for appellants. — 1. Where a trust deed is executed by an insolvent debtor, by the terms of which the trustee is empowered to sell the property conveyed "upon such terms as to him may seem best," and where in addition to such terms in such a conveyance it is shown that the grantor was thoroughly insolvent; that he was considerably indebted at the place where the transfer was made and his property located; that the trustee was his clerk and a comparative stranger in the community, of no pecuniary responsibility; that no security or bond was required of such trustee for the faithful execution of the trust; that the property transferred purported to be all of the goods, stock in trade, and accounts of the grantor; that the transfer was made in great haste and with secrecy; that as understood by the parties to such instrument the trustee might sell such property on credit; that the first beneficiary knew nothing of the tranfer until after the levy of attachments; that the first beneficiary is the brother of the grantor; and where from all the evidence it is apparent that such tranfer was made with the object of hindering and delaying the execution of process of creditors in order to secure the preferred beneficiaries named in such instrument, it is the duty of the court to pronounce such instrument fraudulent and void in law as against the attaching creditors of the grantor. Peiser v. Petticolas, 50 Texas, 638–46; Edmondson v. Silliman, 50 Texas, 112; 19 Fed. Rep., 719; 1 Ct. App. C. C., secs. 769, 760, 1329; Wait on Fraud. Con., secs. 322, 310, 311, 331–33, 224, 225, 230, 234, 239, 241, 242; Bump. on Fraud. Con., pp. 393, 362, 22, 23, 25, 375, 408, 411; 1 Wis., 251; 9 Paige, 406; 2 Wis., 44; 2 N. Y., 371.

2. A trust deed voidable in part, by reason of an unlawful intention participated in by the maker and trustee to hinder and delay the maker's creditors, is fraudulent *in toto,* and can not be supported as against attaching creditors even to the extent of an actual debt covered by such instrument. Wallis, Landes & Co. v. Taylor, 67 Texas, 434, and authorities cited; Wait on Fraud. Con., sec. 134; Bump. on Fraud. Con., p. 364; Weeden v. Haines, 10 Conn., 50; 14 Ala., 55; 14 Johns, 458.

3. Where an insolvent debtor transfers property to a trustee with the primary intent of hindering or delaying any of his creditors, such transfer is void as against attaching creditors; or where the evidence shows that the primary object of an insolvent debtor in making a conveyance in trust to another is to prevent the immediate application of his property to the satisfaction of his debts, such intent will avoid the conveyance. Baldwin

v. Peet, 22 Texas, 721; Jackson v. Harby, 65 Texas, 713–15; W. & W. Ct. App. C. C., sec. 1329; Wait on Fraud. Con., secs. 196, 324; Bump. on Fraud. Con., p. 353; Dunham v. Waterman, 17 N. Y., 9; 52 Md., 211; 4 B. Mon., 423.

*Peyton F. Edwards*, for appellee, cited Waterman v. Silverberg, 67 Texas, 100; Smith & Co. v. Whitfield, 67 Texas, 124; Scott v. McDanie' 67 Texas, 315; Ellis v. Valentine, 65 Texas, 532.

HOBBY, Judge.—The appellants, who were plaintiffs in the court below, caused several writs of attachment to be levied on the property involved as the property of Ben F. Levy, against whom each had obtained a judgment.

The property, which was in appellee's possession, was claimed by him under an instrument executed by said Levy to secure a debt alleged to be due by him to Isaac Levy, and one due the State National Bank of El Paso, and by the terms of which appellee was constituted trustee.

Appellants attacked this instrument upon the ground that the property therein mentioned was conveyed by the grantor Levy with the intent to delay and defraud his creditors. It is obvious from this that the principal issue was whether the instrument, in connection with all the facts developed, showed that the conveyance of the property was made by the grantor with the intention above stated.

Such being the status of the case, the court instructed the jury that, "If they believed Levy executed the instrument conveying the property to I. L. Kraus, that he accepted the trust and took possession, that Levy owed the National Bank and Isaac Levy the sums mentioned, and that the assignment was made for the purpose of paying said debts with the assent of the creditors mentioned, and the property transferred was not greater in amount than the debts, they would find for the claimant. If they did not believe that Levy executed the instrument, but that the property at the time of the levy was the property of Ben F. Levy and in his possession, they would find for the plaintiffs."

A charge was asked by the appellants to the effect that "if they believed that the transfer set up by defendant of the property of Ben F. Levy was made by him with the primary intent of placing such property in such position that it could not be levied on by his creditors, such intent would render the transfer fraudulent and void as to plaintiffs."

As there was nothing in the charge of the court presenting this issue it should have been given if there was any evidence tending to support the averment of plaintiffs that the conveyance of the property was fraudulent.

The evidence established the fact that Ben F. Levy was insolvent at the time of the execution of the instrument; that he was indebted to each

of the appellants in the amounts of the judgments respectively obtained by them against him. The instrument was a conveyance by Ben F. Levy to "I. L. Kraus, of El Paso County, of all of the former's stock of goods, wares, furniture, fixtures, etc., situated in the Mindy building on El Paso Street, including all of his property in said building, except two horses and one wagon, exempt by law, also all of Levy's notes and accounts set out in a list attached; giving said Kraus possession, with full power to sell and dispose of said goods, wares, etc., on such terms as to him may seem best, and full power to collect said notes, etc., in trust to secure and pay off certain indebtedness that I owe as follows: A debt due by me to Isaac Levy, of Chicago, Ill., amounting to about $715, and a debt due the State National Bank of El Paso, amounting to about $2600. And said Kraus shall apply the proceeds of the property above conveyed, and of the notes and accounts above transferred, after paying all just expenses of this trust, to the payment of said debts in the following order: He shall pay off first the principal and interest of the entire debt to Isaac Levy, and second, the principal and interest of the debt to said bank." This instrument stipulated that Kraus should manage and sell said property, and collect said notes and accounts, under the direction of the officers of the said bank, for the benefit of the beneficiaries named.

Kraus, the trustee, was Levy's clerk. The property was conveyed about 5 o'clock p. m. The first attachment was levied about dark of the same evening. After the assignment he took possession, and was in possession when the levy was made. An invoice of the goods showed them to be of the value of about $1880.15. Articles amounting to about $65 were omitted. The understanding was that Kraus was to sell as best he could, using his discretion, and until he could dispose of the goods in bulk or job lots. He carried on the business as other merchants. Kraus did not know Isaac Levy. Knew that Ben F. Levy was insolvent. The list of claims annexed to the instrument amounted to more than $2400. Levy thought these claims were of full value when he assigned. The goods were sold for about $1600 or $1700, which the bank received. No one represented the first beneficiary, Isaac Levy, at the time of the transfer. He knew nothing of it until after the attachment was levied, when he accepted by letter.

The instrument in this case we think was a mortgage with the power to sell. It conferred upon the trustee large discretionary powers, and conveyed what was supposed by the grantor to be goods and property $1000 at least in excess of the debts it purported to secure. It provided that the business might be carried on for such time and in such manner as in the judgment of the trustee was beneficial. This fact of itself, it has been held, would have the effect to delay and postpone other creditors for an indefinite period without their consent. Bump. on Fraud. Con., p. 415.

In Jackson v. Harby, 65 Texas, 710, where, under an instrument in some of its features similar to this, the issue of fraud was presented by the charge, the court held in effect that this issue should have been clearly presented, and not complicated with the issue as to whether there was a conspiracy to defraud. In the present case the charge does not submit the question of fraud in any manner as raised by the pleadings and the proof. The instructions given present issues to the jury about which there was no controversy. The effect of the charge was to direct the jury to find for the defendant or claimant, because under it the jury could only find for appellants if they believed Levy did not execute the instrument, and that the property was his and in his possession at the time of the levy. It was impossible for the jury, guided by the facts, to so find, as it was not contended that Levy did not execute the deed, and there was no evidence that he was in possession of the property at the time of the levy. The charge requested should have been given.

There was no error in refusing the special instruction No. 1 asked by plaintiffs below, which was to the effect that the instrument under which defendant claimed the property as trustee, etc., was void in law against plaintiffs in this case.

This charge necessarily required the court to determine as a matter of law, without the intervention of the jury, that the conveyance upon its face was fraudulent; that the grantor had executed it with the intention of delaying, etc., his creditors. This conclusion could only have been reached by the court from the language of the mortgage, together with the other facts in evidence disclosing badges of fraud, but which the court could not say were beyond explanation, and which it would have said, if it declared as a matter of law that the mortgage was fraudulent. Baldwin v. Peet, 22 Texas, 710.

Whether any or all of these badges were sufficient to establish the fact that the conveyance was fraudulent, was a question for the jury to decide, guided by instructions from the court properly presenting that issue. As we have before stated, this, the vital issue involved, was not submitted to the jury, but instead they were instructed upon questions about which there was no material controversy, and which were not decisive of the rights of the parties. There are other assignments, but we think what we have said disposes of those involving the controlling questions in the case.

We think the judgment should be reversed and the cause remanded.

*Reversed and remanded.*

Adopted November 12, 1889.