### J. L. KRAUS ET AL. v. I. HAAS ET AL.

#### No. 195.

**1. Fraudulent Mortgage — Notice of Intent.** — The intention on the part of the mortgagor to defraud other creditors will not render void a mortgage or deed of trust taken by a creditor in good faith to secure a pre-existing bona fide debt, without knowledge of the fraud intended.

**2. Mortgage Valid in Part and Void as to Part.**—A mortgage may in case of several mortgagees be declared valid as to some and void as to others. Wallis v. Adoue & Lobit, 76 Texas, 120.

**3. Purchaser.**—Under all circumstances a mortgagee who takes a mortgage to secure an existing debt would not be in the same position as a bona fide purchaser for value without notice, but he is comprised within the term purchaser as used in article 2465, Revised Statutes. Shoe Co. v. Mars, 82 Texas, 493.

**4. Conflicting Charges.**—It is error to give conflicting and irreconcilable charges.

##### ON REHEARING.

**5. Fraudulent Intent.**—The fraudulent intent of the mortgagor, unless known to the mortgagee, or unless it was participated in by the mortgagee, will not invalidate the instrument, and when some of the mortgagees have the guilty knowledge, or participate in the fraud, and others do not, the mortgage will be valid as to those who acted in good faith, and invalid as to the others who did not.

APPEAL from El Paso.    Tried below before Hon. T. A. FALVEY.

*Davis, Beall & Kemp* and *Peyton F. Edwards*, for appellants.—1. The instrument executed was a mortgage with power of sale to secure and pay off certain preferred creditors named therein.    Such instruments have

steadily been held, under the decisions of Texas, to be mortgages, and valid, notwithstanding the existence of the assignment law, even when made by an insolvent debtor with full knowledge of such insolvency by the trustees and creditors secured thereby. Haas v. Kraus, 75 Texas, 109; Shoe Co. v. Mars, 82 Texas, 494; Scott v. Daniels, 67 Texas, 316; Stiles v. Hill, 62 Texas, 429; Jackson v. Harby, 65 Texas, 713; Watterman v. Silberberg, 67 Texas, 103; Ellis v. Valentine, 65 Texas, 547.

2. The charge is erroneous in making the intent of the grantor alone render the mortgage void.

*Millard Patterson, A. G. Foster,* and *F. E. Hunter,* for appellees.—The charge of the court was correct. Haas v. Kraus, 75 Texas, 106; Baldwin v. Peet, 22 Texas, 721; Bailey v. Mills, 27 Texas, 437; Houston v. Holt, 23 Texas, 60; Wright v. Linn, 16 Texas, 42; Lesher v. Getman, 9 N. W. Rep., 586.

FLY, ASSOCIATE JUSTICE.—This suit arose out of the trial to the right of certain property which was attached by the appellees and was claimed by appellant as trustee in a certain deed of trust executed by Ben F. Levy to him to secure two debts, one for $715, due Isaac Levy, and the other for $2600, due the State National Bank. The answers of appellees claimed the property through their attachments, alleging that it was the property of Ben F. Levy, who was justly indebted to them; that the trust deed under which appellant sought to hold the property was executed by Levy with the intent to hinder, delay, and defraud his creditors, and Kraus was cognizant of the fraud.

The facts fail to connect the State National Bank with the fraud, if any, on the part of the mortgagor. It was shown that Isaac Levy was in Chicago when the deed of trust was executed, and did not accept under it until after the attachments had been levied on the property.

This is the second appeal of this case, the first being reported in 75 Texas, 109.

The first assignment of error brings before us for review the first clause of the charge given to the jury by the trial judge, as follows: "Now if you believe from the evidence by a preponderance of proof that the transfer to defendant of the property by Ben F. Levy was made with the primary intent of placing such property in such a position that it could not be levied on by his creditors, such intent would render this transfer fraudulent and void as to plaintiffs, and entitle them to a verdict for the property." This is, in effect, a charge approved by the Commission of Appeals and adopted by the Supreme Court on the former hearing of this cause. Haas v. Kraus, 75 Texas, 109. It will be seen from an inspection of this charge that it makes the intent of the mortgagor the controlling

issue in the case, regardless of the intent of the trustee or the beneficiaries. This is assigned as error by appellants.

This is a question of vital importance to the business interests of this State, and if preferred creditors are to suffer on account of the secret intentions of the makers of mortgages and trust deeds, the rule ought to be plainly and unequivocally laid down, in order that there may be no misconception in regard to it. When this case was on appeal before, there was no discussion of this point, but it is simply stated that the charge as above copied should have been given. The matter does not seem to have had any consideration. We have examined the decisions of other States on this question so far as they have been accessible to us, and propose to briefly review some of them.

The case of Howell v. Bowman, 10 Southern Reporter, 641, an Alabama case, decided in 1892, seems to be directly in point, and is an able and well digested opinion. In that case Bowman had executed a deed of trust to one Cardon, for the benefit of R. T. Ewing. Howell had an execution levied on it as the property of the maker of the deed of trust, and it was claimed by the trustee. The consideration for the execution of the mortgage was a past indebtedness. It was held, as has been often done in this State, that the owner of personal property has the right to prefer creditors by giving them mortgages on it to secure a past indebtedness, and then the court says: "Though the natural effect of the transaction was to hinder, delay, or defraud the grantor's creditors, and though he executed the instrument with that purpose, yet if the grantee did not participate in such intent, but accepted the conveyance for the sole purpose of securing a bona fide debt of the amount named in the instrument, then the security could not be pronounced invalid because of its effect upon the rights of other creditors, or because of the fraudulent purpose of the grantor. Whether the mortgagee participated with the debtor in an intention to have the mortgage serve the purpose of putting the property included therein in such a position as to secure an unauthorized benefit to the mortgagor, or to hinder, delay, or defraud other creditors, is generally a matter of inference or deduction from the circumstances attending the transaction." The case was reversed because the trial court failed to present the bona fides of the mortgagee to the jury instead of the mala fides of mortgagor.

In the case of Carr v. Brigg, 30 Northeastern Reporter, 470, the Massachusetts Supreme Court held, that the fraudulent intent of the mortgagor did not affect the rights of a mortgagee who had taken the mortgage in good faith to secure his debt.

In Showman v. Lee, 49 Northwestern Reporter, 578, the Supreme Court of Michigan bases its decision on the good or bad faith of the mortgagee, and not of the mortgagor.

In a Kansas case it was held, that fraudulent intent on the part of both

the mortgagor and trustee would not invalidate a deed of trust unless the beneficiary participated in and was a party to the fraud.    Bank v. Ridenour, 27 Pac. Rep., 150.

The Supreme Court of Indiana, in an opinion delivered in 1890, says: "It appears that the chattel mortgage was executed to secure a debt due the mortgagee, and hence it was supported by a sufficient consideration. It is a familiar rule, that where a mortgage is founded upon a valuable consideration, it will not be decreed void, unless the mortgagee united with the mortgagor to defraud the creditors of the latter.    If there is in such a case no affirmative evidence of fraud on the part of the mortgagee, the mortgage will stand.    Straight v. Roberts, 26 N. E. Rep., 73; McFadden v. Ross, 26 N. E. Rep., 78.

The cases cited to which we have referred are those in which property was mortgaged to secure pre-existing debts.    There can be no doubt, under our decisions, that a debtor in failing circumstances can give a valid mortgage on so much of his property as may be necessary to secure the bona fide debt of a creditor, and we have seen no Texas case where it was held that a mortgage made directly to a creditor, who had accepted the same, could be rendered void by the fraud of the mortgagor alone. The rule is different in deeds of trust where there has been no acceptance on the part of the beneficiaries.

In this, as well as other States, it has been held that where there is no evidence of fraud on the part of grantor or mortgagor, the law presumes an acceptance upon the part of him to whom or for whose benefit the instrument is executed; but when a fraudulent purpose is shown upon the part of the maker, the law will not presume the assent of a beneficiary to such a deed, however much it be for his benefit, for this would put it in the power of the grantor or mortgagor by a legal presumption to render valid his fraudulent act.    Ashley v. Robinson, 29 Ala., 112.    However this rule may have been, it is now held by our Supreme Court, that in case of a mortgage which has been followed by an attachment, that the acceptance of preferred creditors will not be presumed.    Alliance Milling Company v. Eaton, Guinan & Co., 86 Texas, 401.    The bank in the case we are considering did accept.    Though the rule be as just decided by the Supreme Court, the question of acceptance was the one upon which turned the case of Baldwin v. Peet, 22 Texas, 708.

We are of the opinion that the mortgagee or the accepting beneficiary under a trust deed is placed on the same plane with a purchaser, and is included within the broad meaning of the word "purchaser."    While it seems to us consonant with reason and justice that the bona fide creditor who has obtained security for his debt should be protected, as well as the purchaser in good faith, still we would hesitate to so express our opinion, were we not fortified by the opinion of the court of last resort in this State.

In construing the paragraph, "But if it shall appear in such action that the purchaser of any such property bought the same in good faith," etc., the Supreme Court says: "If we are to take the word purchaser in its technical sense, and in the sense in which it is used in the statutes of registration and of frauds, it would clearly comprehend the mortgages in this case." After citing a number of cases to sustain the above language, it is said: "But the word *bought* is not a technical term, and has a far more restricted meaning. If the signification of the word purchaser is to be controlled by the latter term, then a mortgage is not included.   One who has taken a mortgage upon property, though he may be a purchaser, can not be said to have *bought* according to the literal meaning of that word.   What then is the construction of the language?   Did the Legislature mean to except only such persons as had bought property of the assignor, paying value, and without notice?   Or did they use the word *bought* as the equivalent of *purchase* in its enlarged legal sense?   We think the latter the better construction.

"We take it that the equity of a purchaser who has bought and paid for the property, absolutely without notice of an intent to assign, is no higher than that of a mortgagee who has parted with his money, taking merely a lien upon the property to secure its repayment.   The Legislature did not, we think, intend to make a distinction in cases in which the equities are the same.   It is not to be presumed that it designed to make a law manifestly inequitable and unjust.   We are of the opinion, therefore, that the mortgagees as well as the purchasers of the absolute title were intended to be protected by the provision under consideration." Hardware Co. v. Kaufman & Runge, 77 Texas, 131.

"This is said of the assignment law where the word *bought* is used, but it can with much greater force and reason be applied to a statute where the word *purchase* ' in its enlarged legal sense' is used.   We can see no valid reason why the creditor who has secured a valid subsisting debt is not entitled to the same consideration at the hands of law as a purchaser for a valuable consideration without notice.   There is neither in common sense nor morals any difference between them, and in both instances, but in one no more than the other, some creditor may be hindered and delayed, and perhaps forever prevented from collecting a debt due him.

"It is true, in the further course of the case above cited, the case seems to turn on the fact that the beneficiaries had surrendered a previous security and extended a debt; but this was not the turning point in the case as we understand it, and in another part of the opinion it is said that the beneficiaries in the deed of trust were protected because they had no notice that the deeds of trust were executed in contemplation of an assignment. The rule laid down in the cases of Steffian v. Bank, 69 Texas, 517, and in McKamey v. Thorpe, 61 Texas, 648, does not conflict with the view entertained by us.

"We do not hold that under all circumstances a mortgagee who takes a mortgage to secure an existing indebtedness would be held to be in the same position as a bona fide purchaser for a valuable consideration without notice, but only that he is comprised within the term 'purchaser' as used in article 2465. This is in effect so decided in the cases of Shoe Company v. Mars, 82 Texas, 493, and Wallis v. Adoue & Lobit, 76 Texas,. 120, where it is held, that in the absence of testimony of fraudulent intent. known by the assignee or creditor secured, the mortgage could not be set aside as fraudulent.''

This declaration of the Supreme Court in the case in 82 Texas is vigor-- ously attacked by appellees as obiter dictum, and as not being sustained by the authorities cited in support of the proposition. We have consulted the case of Morris v. Pearson, 28 American Decisions, 315, and find not only that it sustains the proposition referred to, but that it quotes from the other cases and many others, and all are directly in point.

In Bump on Fraudulent Conveyances, 385, under the heading of Fictitious Debts, it is said: "An appropriation of the property to the payment of debts not owing by the assignor, and not contracted on his account,. or for a larger sum than is due, to the prejudice of his creditors, is evidence· of fraud. This will not, however, make the assignment void, unless the· assignee participates in the fraud." Feldman v. Gamble, 26 N. J. Eq., 494; Carlton v. Woods, 28 N. H., 290, and Hardcastle v. Fisher, 24 Mo.,. 70, are all in point.

In a recent decision in Missouri it is held, that a failing debtor may prefer one creditor to another by giving the former a mortgage to secure· an existing indebtedness, where it is accepted in good faith by the creditor for the sole purpose of such security. Schroeder v. Babbitt, 18 S. W. Rep., 1093. This seems to be the drift of all the later decisions.

There is, as we have before remarked, a clear distinction between the· case of a party who obtains a mortgage on property of another to secure an existing debt through the fraud of the mortgagor, and one who, acting in good faith, gets a mortgage on property belonging to the mortgagor to secure a bona fide pre-existing debt. In the one case another innocent man would be defrauded, without the mortgagee having parted with anything valuable in consideration thereof; on the other hand, no one is injured, except as every creditor is injured by a preference. The distinction is clear and marked to our minds.

We are of the opinion that the intention on the part of the mortgagor · to defraud other creditors will not render void a mortgage or deed of trust taken by a creditor in good faith to secure a pre-existing bona fide debt, without knowledge of the fraud intended. This idea is fully em-- bodied in a case in 76 Texas, the opinion being delivered by the same judge who rendered the previous opinion in the case of Haas v. Kraus.. Wallis v. Adoue & Lobit, 76 Texas, 120.

If our construction of the law be correct, it then follows, " as the night the day," that a mortgage might in the case of several mortgagees be declared valid as to some and void as to others. This is in the line of a large number of decisions that have come to our notice. Morris v. Pearson, 28 Am. Dec., 315, and the decisions of a number of States therein reviewed.

In 1 Jones on Mortgages, section 620, it is said: "Where the consideration of a mortgage is made up of several distinct transactions, some of which are legal and others are not, and the one can be separated with certainty from the others, the mortgage may be upheld for such part of the consideration as was free from the taint of illegality."

In the case of McIntosh v. Corner, 33 Maryland, 598, it is said: "But it by no means follows that because some of the preferred debts may be fraudulent and therefore void, the assignment itself should be declared a nullity. Some of the debts claiming priority of payment may be founded in fraud, and still the assignment be good as to all the debts that are bona fide."

We have seen no Texas case that holds a contrary doctrine. The cases of Freiberg v. Freiberg, 74 Texas, 127; Brasher v. Jamison, 75 Texas, 139; Wallis v. Adoue & Lobit, 76 Texas, 462, which appellees contend support the doctrine that the fraud of one preferred creditor would render a mortgage void as to the others, do not uphold any such doctrine. In each of those cases it is held, that if a creditor takes a mortgage to secure a debt or debts, a portion of which is fictitious and fraudulent, that fact would render void the whole contract. That rule is but a just and reasonable application of the rule, that when a creditor is cognizant of the fraud of the mortgagor, the mortgage as to other creditors would be null and void. Knowledge of the fraud, and further a guilty participation in the fraudulent purposes of the mortgagor, could not be more strongly established than by proof that a portion of the debt was fictitious, and the fraud of the mortgagee would taint the whole transaction.

In the case of Cox v. Miller, 54 Texas, 27, cited by appellee, the Supreme Court says: "Nor will the fact that the result of a fraudulent deed is to secure the payment of a valid and bona fide debt, equal or greater in amount than the property conveyed, remove from the deed the taint of fraud as against the grantee chargeable with notice of the wrongful intent and purpose of its execution." It is true that immediately succeeding the above proposition, the court says, that the grantee or beneficiary in a voluntary deed, made with fraudulent intent, will be affected by the fraud if he attempts to claim under it, though in fact he had no knowledge of the fraudulent intent of the grantor, and cites a number of Texas cases to sustain the proposition, but we find that every one of them are made to turn upon the good or bad faith of the grantee or mortgagee.

We have devoted more time and attention to the point we are considering, for the reason that it is strongly presented from both standpoints by the counsel in this case, and for the reason that there is not that clearness on the subject that should characterize judicial utterances. And again, as before stated, it is a matter of vast importance to the business interests of our State, and the rule should be made so plain and simple that any one can readily understand it. We are of the opinion that it was error to give the charge of which complaint is made, and it was certainly error, even if the charge was correct, to repeat it almost literally in a charge requested by appellee.

After giving the clause of the charge herein before copied, the trial judge gave the following charge to the jury: "If, however, you should believe that the alleged indebtedness to Isaac Levy was simulated, but that the property conveyed was done with the bona fide intention on the part of Levy to secure the State National Bank in the payment of a debt he was justly due it, and that the property conveyed was not of sufficient value to pay or did not exceed in value the debt due said bank, and that the officers in control and management of the bank did not know at the time they accepted such security for the debt that the alleged debt to Isaac Levy was simulated and fictitious, you will find for the defendant."

This seems to be in direct conflict with the first mentioned charge, for the reason that it permits the jury to base a verdict on the good faith of the bank and the value of the property, and the first makes the verdict for appellants to depend upon the good faith of the mortgagor. These two clauses of the charge are irreconcilable. If the value of the goods mortgaged were largely in excess of the bona fide debts intended to be secured, it would be a strong badge of fraud, and taken in connection with the insolvency of the mortgagor and that of the trustee, and the fact that the trustee was a clerk of the mortgagor, would, if it had been properly presented to a jury for their consideration, constitute a case that would not be disturbed. But we can not say how far the jury may have been influenced by the conflicting charges and the emphasis put on the illegal charge by repeating it.

The other errors complained of are not likely to occur on another trial. For the errors indicated, the judgment will be reversed and the cause remanded.

*Reversed and remanded.*

Delivered February 28, 1894.

ON MOTION FOR REHEARING.

FLY, Associate Justice.—Appellee's counsel seems to misapprehend portions of the decision of this court. We held it erroneous not only for two charges that are not only similar, but the same, to be given, but also

to give two that are so dissimilar as to be directly and pointedly in conflict with each other. We copy two clauses of the charge which are irreconcilable, and which fact alone would ordinarily necessitate a reversal.

The first clause is as follows: "Now if you believe from the evidence by a preponderance of proof, that the transfer to defendant of the property by Ben F. Levy was made with the primary intent of placing such property in such a position that it could not be levied on by his creditors, such intent would render this transfer fraudulent and void as to plaintiffs, and entitle them to a verdict for the property." This charge is repeated, and then the following is given: "If, however, you should believe that the alleged indebtedness to Isaac Levy was simulated, but that the property conveyed was done with the bona fide intention on the part of Levy to secure the State National Bank in the payment of a debt he was justly due it, and that the property conveyed was not of sufficient value to pay or did not exceed in value debt due said bank, and that the officers, at the time they accepted such security for the debt, knew that the alleged debt to Isaac Levy was simulated and fictitious, you will find for the defendant." The charges are directly in conflict.

It is contended that the principle enunciated in the last part of the decision in the case of Howell Bros. v. Mars, 82 Texas, 494, is obiter dictum, and calculated to mislead; but we believe it to be a true enunciation of the law, supported by the current of authority.

We see no reason to recede from our former position, that the fraudulent intent of the mortgagor, unless known to mortgagee, or unless it was participated in by the mortgagee, will not invalidate the instrument, and that when some of the mortgagees have the guilty knowledge or participate in the fraud, and others do not, the mortgage will be valid as to those who acted in good faith, and invalid as to the others who did not.

Since rendering our original opinion in this case, we have been fortified in our position by a clear and able opinion rendered by Judge LIGHTFOOT, of the Court of Civil Appeals of the Fifth District. Rider & Co. v. Hunt, ante, 238. A number of authorities have been cited in that opinion which sustain the position taken by that court and this. We are unable to agree with the doctrine enunciated in Simon v. Ash, 1 Texas Civil Appeals, 202, or to some extent that of the case of Ellis v. Stewart, 24 Southwestern Reporter, 585. The decision of the last case was rendered by the same court that rendered the decision in case of Rider & Co. v. Hunt, but it antagonizes not only the latter case, but also the one of Johnston v. Shoe Company, 5 Texas Civil Appeals, 398.

In the case of Ellis v. Stewart, the case of Simon v. Ash is seemingly followed, although we are of the opinion that the learned judge did not intend to follow that case to the extent of holding that fraud on the part of the maker of a deed of trust would vitiate it, regardless of the intent

of the beneficiary; for on that same day the same court, in passing on a deed of trust says, " But a mortgage executed by a failing debtor with intent to hinder, delay, or defraud his creditor is void as to any such creditor who has notice of such fraudulent purpose and assists in the execution of it." Whenever the doctrine is admitted, that a deed of trust may be fraudulent as to some and valid as to other creditors, as is enunciated so often, it must surely follow that the validity of the instrument depends on the good faith of the beneficiary, and not that of the maker. Jones on Chat. Mort., sec. 336.

Appellees in their motion seem to think that we are ignoring the decision of this case in 75 Texas, 108, but we are not; but with due deference to the court that rendered that opinion, we must differ from it; and neither can we affirm this case, as asked by appellees, in order that it may be appealed to the Supreme Court by appellant.

We are called upon to give our opinions on causes before us in the light in which we see them; and while it is best that well established precedents should be followed, the law does not demand of this court to follow a decision or decisions which it believes not supported by sound principles and the current of decisions throughout the Union. The law contemplates that there would be instances in which Courts of Civil Appeals would differ with the Supreme Court and with each other, and provides a possible remedy for it. Our conclusions of fact and law will be filed as requested by appellees.

The motion for rehearing is overruled.

           · *Motion overruled.*

Delivered February 28, 1894.

Writ of error refused May 3, 1894.